COLLINS v. HYDORN et al.

(Supreme Court, General Term, Third Department. November 26, 1890.)

ACTION TO SET ASIDE FRAUDULENT CONVEYANCE—FINDINGS.

Where, in an action by a judgment creditor to set aside conveyances as in fraud of creditors, the court finds that the deeds were not fraudulent, its omission to find various incidental evidentiary facts, tending towards an opposite finding, is not ground for reversal.

Appeal from circuit court, Rensselaer county.

William Collins, as assignee for the benefit of creditors of George M. Wiswall, sued Elisha W. Hydorn and others on an action in the nature of a creditors' bill to set aside conveyances of real estate made by Elisha W. Hydorn to his son, J. Bartlett Hydorn, as alleged, with the intent to defraud the creditors of the grantor. The court submitted to the jury certain questions of fact. The jury failed to agree, and the court decided the case, making findings of fact and law, and dismissing the complaint. Plaintiff appealed.

Argued before LEARNED, P. J., and LANDON, J.

S. B. Wellington, for appellant. Charles E. Patterson, for respondents.

LANDON, J. The case presents a close question of fact,—one which, as the testimony appears upon the printed page, would admit of an answer either way. The trial judge saw and heard the witnesses, and it is possible that

what seems to us evenly balanced did not so appear to him. Where it does not appear that his findings of fact are wrong, we must accept them as right.

The leading facts as found by the trial court are that Elisha W. Hydorn, being insolvent, did on the 27th of July, 1885, convey by several deeds to his son, J. Bartlett Hydorn, the real estate described in the complaint. Said real estate was worth $83,450; was incumbered by mortgages and otherwise to the extent of $75,079.35. The actual consideration was an existing indebtedness of father to son of about $18,300; the assumption by the son of payment of the incumbrances; and the contingent liability of the son as accommodation indorser upon his father's notes, held by two banks, to the amount of $24,000, payment of which was secured by securities given by the father to the banks. The plaintiff's assignor was at the time a judgment creditor of Elisha W. Hydorn, with executions returned unsatisfied. Upon these facts the father's apparent equity in the real estate was $8,370.65. Elisha W. Hydorn, on the same date, and upon the same consideration, and as part of the same transaction, conveyed to his son, J. Bartlett Hydorn, his estate as tenant by the curtesy in other real estate. His late wife was the mother of J. Bartlett. She died intestate, seised of real estate of the value, as shown by the testimony, though not found by the trial court, of $21,200 over and above incumbrances. J. Bartlett Hydorn was her sole heir. The trial court did not find the value of Elisha W. Hydorn's estate as tenant by the curtesy in the real estate left by his wife. He was 52 years old in July, 1885; and by the Northampton tables his life-estate was worth $10,520.50. The testimony tends to show that neither father nor son had any clear idea of the extent or value of the father's life-estate in the real property left by Mrs. Hydorn. Elisha W. and J. Bartlett Hydorn had together executed a mortgage for $6,000 upon all the real estate left by Mrs. Hydorn, and Elisha W. had used the money. This mortgage was wholly unpaid, and its amount ($6,000) forms part of the $18,300 above mentioned as the existing indebtedness of father to son. It is not improbable from the testimony, and in the absence of any finding upon the subject we incline to the opinion, that it was understood between the father and son that the $6,000 which the father had been permitted to take from this real estate was fully equal to whatever interest he had in it. This would reduce the existing indebtedness of father to son to $12,300. Elisha W. Hydorn also, at the same date, and as part of the same transaction, transferred to his son, J. Bartlett, a bond and mortgage of the amount and value of $5,000. Deducting this, and the subsisting indebtedness of father to son would be reduced to $7,300. In this view, the father transferred to the son property worth about $1,000 more than enough to satisfy his indebtedness to his son.

The trial court found that the conveyances were not made to defraud creditors. This finding is in accord with the testimony of the father and son, who speak directly to their intent. The plaintiff insists that the transaction itself, and other transactions nearly contemporaneous with this, and the acts of the parties in their subsequent dealings with the property, require a different finding. We have carefully examined the testimony, and find no sufficient reasons to reverse the finding. Elisha W. Hydorn was insolvent. He had incumbered his own estate nearly to its full value, and he had to a large extent wasted that of his son. His son was importunate in his demand that he be paid or secured, and this method was adopted. It is easy to believe that the intent of the parties was not to defraud other creditors, but to satisfy this one. The subsequent dealings of the parties with respect to the estate conveyed were such as indicate the son's regard for his father, and are consistent with honesty of purpose. Difference in opinion as to values naturally exists. It would be unjust to impeach a transaction as fraudulent because of an honest difference of opinion as to values. Perhaps it would be wise, in cases like this, to allow the unprotected creditors to act upon their own esti-

mate of values, and to redeem the property from the debtor's grantee; but that would be a different proceeding from an impeachment of the conveyance for fraud.

A witness testified, in behalf of the plaintiff, as to the value of the several parcels of real estate. He had been an assessor. The defendant was permitted to read an order of the special term showing that an assessment upon other real estate, made by the board of which the witness was a member, had been reduced for overvaluation by the court upon *certiorari.* Doubtless, such testimony was irrelevant; but to reverse the judgment for this cause would be to hold that the learned trial judge was probably improperly influenced by it. The order, in connection with other testimony, showed that, out of 15,000 parcels of property assessed by the witness, the relator in the *certiorari* was able to satisfy the court at special term that the property embraced in it was overvalued. The evidence was not a general impeachment of the judgment of the witness. It probably would have misled a jury, but we think the presumption a just one that a judge would disregard it. We do not mean to say that a judge has any different right from that of the jury to act upon irrelevant or incompetent evidence, but we do say that a judge will distinguish between the evidence which touches the question and that which does not, when a jury might not; and we can safely say in the one case that such evidence did not affect the result, when we might be unable to say it in the other.

Five months after Elisha W. Hydorn's conveyances to his son, the son conveyed the property, through an intermediary, to his wife. Elisha W. Hydorn continued to collect the rents of the property, and upon its conveyance to his son's wife she gave him a power of attorney to manage it and collect the rents. She soon revoked the power of attorney, and then leased the property to Elisha W. Hydorn's second wife for one dollar; the lessee to pay interest on incumbrances, taxes, and make repairs. These transactions were adduced to show that the intent of the parties in the first and subsequent conveyances was to enable the father to enjoy the property through the protection which a change of title, with a secret trust or confidential relation, would afford him. The trial court considered these transactions, and the evidence adduced with respect to them, and held, upon all the evidence, that fraud was not established. The court also held that the son's wife purchased the property upon a valuable consideration, in good faith, and without notice of any fraud. We concur in both findings. But the plaintiff's counsel alleges error in that the court did not find as requested touching certain transactions of the parties subsequent to the conveyances from father to son, as that the son's wife never collected any of the rents of the property; that, when she gave the power of attorney to Elisha W. Hydorn, she intended he should enjoy all the rents and profits as long as he should live; and that Elisha had, directly or indirectly, enjoyed the profits of the property since it was conveyed to his son's wife, and that such was the intent of the latter in taking the conveyance from her husband; and that the lease was given to Mrs. Elisha Hydorn because Elisha himself could not hold it, upon account of his creditors. So long as the court found that the conveyances were not fraudulent, the omission to find the various incidental evidentiary facts, tending towards an opposite finding, is not ground for reversal. If the conveyances were valid, these things might occur without any retroactive effect upon their validity. It would be useless to find them, unless fraud should also be found. The judgment should be affirmed, with costs.

LEARNED, P. J., concurs.    MAYHAM, J., not acting.