Nos. 19,219 and 19,220.

IDA M. NORDMAN et al., *Appellants,* v. SARAH BERTHA JOHNSON, alias SARAH BERTHA NORDMARK, *Appellee.*

SYLLABUS BY THE COURT.

CONVEYANCE—*Will—Validity of—Mental Capacity of Grantor and Testator—Request for Findings of Fact—Duty of Court —Validity of Marriage Contract.* In a suit tried by the court involving the validity of certain conveyances and a will executed thereafter and the mental capacity of the grantor and testator, it was error for the court to refuse, upon timely request to make findings of fact covering the material issuable matters put in issue by the pleadings and on which evidence was introduced.

Appeals from Republic district court; JOHN C. HOGIN, judge. Opinion filed March 6, 1915. Affirmed in part and reversed in part.

*Nelson J. Ward,* of Belleville, for the appellants.

*R. S. Hanley,* and *J. M. Livingood,* both of Belleville, for the appellee.

The opinion of the court was delivered by

WEST, J.: These two cases involve the validity of a marriage, a will and a conveyance. In No. 19,220, the plaintiffs, the children of Charles Nordmark, sought to have the will of their father set aside on the ground of undue influence and lack of testamentary capacity. They alleged among other things that for many years prior to his death at the age of eighty-seven their father was feeble of health and unsound of mind, and that the will was made at the instance of his second wife, Sarah Bertha, and that she went through the form of a marriage to the testator in 1906, at a time when he was incapable of entering into a valid contract of marriage. The will gave the estate to the wife, and appointed her executrix, after giving one dollar to each of the plaintiffs. The court decided in favor of the defendant, and made findings of fact to the effect that the first wife died about 1904, and that the testator was legally married to Sarah Bertha Johnson September 5, 1906, and lived with her as his wife to the time of his death, June 26, 1912, and that when he executed his will on the 8th day of June, 1912, he was of sound mind and memory and capable of executing a valid will and under no restraint or influence, and that the making of the will was his free act and deed. As a matter of law it was concluded that the will was regularly and legally made and executed and admitted to probate.

The plaintiffs complain principally of the trial court's refusal to find the material facts as requested by them, and of its refusal properly to place the burden of proof to show lack of undue influence. The plaintiffs requested twenty-five findings of fact and suggested thirteen others, all of which were refused. The first list consisted largely of questions touching dates and details of the history of the testator and his family up to the time of his second marriage, his conduct towards

his children, his health and the conduct of his second wife, and alleged delusion and undue influence. The suggested findings bore especially upon the testator's prejudice against his children in his last years, his mental condition, and the relations between his children and the second wife and the influence of the latter over him, and his prejudice, delusion and mental capacity. It is claimed that had the proper findings been made in accordance with the facts shown by the testimony the plaintiffs would then be in condition to demonstrate that the wrong legal conclusion was reached. It would seem at first blush that as findings on the matters suggested probably would not have changed the trial court's view of the ultimate facts their refuseal could not be said to have worked material prejudice to the plaintiffs. But the real question is whether or not the complaining party has been denied a statutory right the refusal of which was error.

The civil code requires that all mere technical errors and irregularities be disregarded when they do not appear to have prejudicially affected the substantial rights of the party complaining, "where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court." (Civ. Code, § 581. See, also, Civ. Code, § 141; *Saunders v. Railway Co.*, 86 Kan. 56, 119 Pac. 552.) The code provides for a special verdict, and has done so since 1859. (Compiled Laws, 1862, ch. 26, §§ 286, 287.) The provision then embodied in section 287, that the jury in certain actions might at their discretion render a general or special verdict, remained until 1870, when by section 7 of chapter 87 of the Laws of that year, original section 287, then section 286 of the civil code (Gen. Stat. 1868, ch. 80, § 286), was amended so as to take away this discretion from the jury, and providing that in all cases the court, at the request of parties or either of them, should "direct the jury to find a special verdict, in writing, upon all or any of the issues in the

case; and upon like request to instruct the jury, if they shall render a general verdict, to find upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon. The special verdict or finding must be filed with the clerk and entered in the journal." This was repealed by section 1 of chapter 91 of the Laws of 1874, and in its stead it was enacted that "In all cases the jury shall render a general verdict, and the court shall in any case at the request of the parties thereto, or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same." Section 286 of the code of 1859 was still left untouched, and its exact wording is now found in section 294 of the civil code of 1909, and together with the amendment of 1874 forms the whole of such section save the provision that the special findings control the general verdict when inconsistent therewith. Hence, while the old-style special verdict by which the jury voluntarily found the facts only and returned no general verdict has not been permitted since 1870, the code still recognizes and defines a special verdict, although always requiring a general verdict also.

In 2 Thompson on Trials, 2d ed., it is said:

"Such a finding of facts is *in the nature of a special verdict,* and is interpreted and its sufficiency is determined by the same rules. Accordingly, it is laid down that the judge must find *facts,* and *not* the mere *evidence* of facts, and that his finding must not leave a part of the facts to be presumed, but must state all the facts which are deemed material, so that the court will have nothing to do but declare the law upon the same." (§ 2658.)

In *National Bank v. Peck,* 8 Kan. 660, the court, speaking through Mr. Justice Brewer concerning a complaint that the special verdict there involved did not state all the facts established by the evidence, said:

"What is a special verdict? . . . A special ver-

Nordman v. Johnson.

dict, on the other hand, finds only facts, and leaves to the court the duty both of determining the law and of applying it to the facts. . . . But what facts? How minutely may they, must they, be subdivided? The facts stated in the pleadings; as minutely, and no more so, in the special verdict, than in the petition, answer, and reply. The special verdict must conform to the pleadings. The word 'facts' is used in this section in the same sense, and refers to the same things, as when used in section 87 of the code, which declares that a 'petition must contain a statement of the *facts* constituting the cause of action in ordinary and concise language, without repetition.' There are in every cause of action certain essential, substantive facts, certain elements, so to speak. Every pleader knows this when he prepares a petition. The omission of any one of these elements renders the petition defective. The failure to prove one defeats the cause of action. Now these essential elemental facts are the ones the special verdict must find, no more, no less. A history of the case in the nature of a recital of the testimony, or a detail of the various steps in the transaction is not the function of a special verdict. It responds to the various facts of the petition like a special denial, touching each separately." (pp. 665, 666.)

In *McCandliss v. Kelsey*, 16 Kan. 557, it was held that when a case is tried by the court without a jury and special findings are demanded it is generally the duty of the court to find upon all of the issuable facts, but that this does not require a finding upon matters set forth which are really foreign to the controversy; that an omission to find upon all of the issuable facts will not always compel a reversal, but if the facts which are found compel the judgment which is rendered, regardless of the others not passed upon, the omission is not prejudicial error. In the opinion the writer of the opinion just referred to, speaking for the court, said:

"The case was tried by the court without a jury, and special findings were demanded. In such a case, is it the duty of the court to find specifically upon all the matters put in issue by the allegations in the petition and denials in the answer? and will a failure to discharge this duty compel in all cases a reversal? It may

be stated, as a general proposition, that it is the duty of the court to find upon all the issues in the case. . . . It is enough, if the court has found upon all the facts put in issue by the pleadings, material to the controversy." (p. 558.)

It was further said when there is some pivotal fact on which the case turns the failure to find on some other matter does not necessarily amount to material error. The example given is a finding that in an action on a note for goods sold and delivered full payment had been made before the action was begun. In *Briggs v. Eggan*, 17 Kan. 589, it appeared that the defendant had in a formal manner presented seventeen conclusions of fact which were wholly refused by the trial court, and this was held to be substantial error, and it was said:

"Of course, the court is not bound to make special findings concerning immaterial facts; nor is the court bound to find the material facts in any greater detail than is really necessary for the correct decision, by a higher court, of the questions of law involved in the case." (p. 591.)

In *Schuler v. Lashhorn*, 67 Kan. 694, 74 Pac. 264, it was held that "Upon the trial of a question of fact by the district court, it is its duty, upon request, to find the material facts established by the evidence, so that exceptions may be taken to its views of the law involved in the trial. Error in this respect will not be presumed, but must be affirmatively shown." (Syl. ¶ 2.) That was an action to recover real property with damages for its detention. The trial court made special findings of fact, nineteen in number, covering various moves, offers, dealings, occupations, deaths, conveyances, failure to demand recognition of title, recognition of ownership, rental value, ownership, and the making of certain improvements. Mr. Justice Burch, in the opinion, pointed out a number of things which the findings did not show but which the plaintiff's counsel assumed, and after discussing the conclusiveness of the findings made said:

"When the district court was requested to make find-

ings of fact it was its duty to find the material facts established by the evidence, so that exceptions might be taken to its views of the law involved in the trial." (p. 700.)

It was pointed out, however, that no motion for modification or to include additional findings was made. It was finally said:

"The findings respond to the issues, cover every fact essential to recovery by the plaintiffs, are all sustained by sufficient competent evidence, and are in harmony with the apparent weight of the evidence. The conclusions of law are legitimate deductions from the facts found and the judgment follows as a necessary and inevitable consequence." (p. 705.)

In *Vickers v. Buck,* 70 Kan. 584, 79 Pac. 160, the rule was laid down that when findings of fact are requested "it is error for the court to refuse the request, or to refuse to make such separate findings so definite that the party may have a fair opportunity to except to the decision of the court upon the conclusions of law involved in the trial." (Syl. ¶ 2.) It was again held, in *Harper v. Harper,* 83 Kan. 761, 113 Pac. 300, that:

"If the findings and conclusions are clearly stated, so that the conclusions reached by the court can be readily understood, as well as the facts upon which they are founded, this will be sufficient." (p. 772.)

There the complaint was that the findings of fact and conclusions of law were not made separately, as requested, and that the facts found required a judgment different from the one rendered. That, too, was a suit to set aside a will on the grounds of mental incapacity and the undue influence of the principal legatee. But the court made thirty-seven findings detailing the amount of property owned by the testator, the fact of his childlessness, where and with whom he lived, his sickness, his health of body and mind just prior to his death, his preparation of a memorandum of his will, the drawing of certain deeds, his consultation with an attorney, the dictation of the will, its deposit in a tin

box in a bank vault, the failure to disclose the value of the property covered by the residuary clause, the testator's business ventures with the principal legatee, statements made by the latter about the testator and his property, his conduct upon hearing of his death, his expression of surprise that a will had been made, the possession of the will, the appointment and conduct of the principal legatee as executor, and numerous other matters and things, followed by the finding of mental capacity and freedom from undue influence. It was not strange, therefore, that this court said:

"We think the findings and conclusions in this case are sufficient, and are unable to say that they are erroneous in any particular." (p. 772.)

Doubtless they were unnecessarily minute and detailed, but had they embraced nothing but the age, marriage, death, heirs, mental capacity and freedom from undue influence, a different question would have arisen. In *Norris v. Jackson,* 76 U. S. 125, Mr. Justice Miller had under consideration a provision of the act of March 3, 1865, reading as follows:

"The finding of the court upon the facts, which finding shall be general or special, shall have the same effect as the verdict of a jury. . . . When the finding is special, the review may also extend to the determination of the sufficiency of the facts found to support the judgment." (13 U. S. Stat. at Large, ch. 86, § 4, p. 501.)

In the opinion it was said:

"This special finding has often been considered and described by this court. It is not a mere report of the evidence, but a statement of the ultimate facts on which the law of the case must determine the rights of the parties; a finding of the propositions of fact which the evidence establishes, and not the evidence on which those ultimate facts are supposed to rest." (p. 127.)

In *Anglo-American Land, M. & A. Co. v. Lombard,* 132 Fed. 721, 68 C. C. A. 89, the circuit court of appeals of the eighth circuit declared that a special find-

ing of fact should be equivalent to a special verdict of a jury "and should cover all the issues, so that in the event of proceedings in error, if the trial court's conclusions of law are deemed incorrect, and if the proceedings are otherwise without error, the appellate court may, under section 701, Revised Statutes, direct such judgment as the special finding requires. . . . To meet the requirements of the statute, as defined in the decisions of the supreme court and of the several circuit courts of appeals, a special finding should be a clear and concise statement of the ultimate facts, and not a statement, report, or recapitulation of evidence from which such facts may be found or inferred. The ultimate facts must be so stated that, without inferences, or comparisons, or balancing testimony, or weighing evidence, the case may be determined by the application of pertinent rules of law. If any ultimate fact material to the issues is to be inferred from the whole evidence, or from other facts proved or admitted, the inference must be drawn by the trial court, and the fact must be stated in the findings. Like the special verdict of a jury, a special finding can present only questions of law." (pp. 733, 734.) In *Cointe v. Congregation of St. John the Baptist,* 154 Wis. 405, 143 N. W. 180, it was held that facts required to be found are the ultimate, not merely the evidentiary facts.

"The ultimate facts which should be so stated are, generally speaking, the issuable facts which a pleading should contain. They are the facts upon which the plaintiff's right of recovery or the defendant's right to defeat a recovery *necessarily* depends.

"The statement of an ultimate fact frequently includes a legal conclusion from the evidentiary facts." (Syl. ¶¶ 2, 3.)

The action was to recover for a well drilled on the defendant's land, and it was denied that any contract had been made, either expressly or by ratification or estoppel. In an extended opinion the trial court gave a history of the affair leading up to the controversy and

27—94 KAN.

concluded that the plaintiff had shown no contract binding on the defendant and that he was not entitled to recover. It does not appear that any request was made for findings, that any were submitted, or that any fault was found with those prepared from the extended opinion referred to, which were practically a repetition thereof. The conclusions were affirmed, but in the opinion it was pointed out by Chief Justice Winslow that the difference between ultimate and evidentiary facts may be illustrated thus: In a personal injury action the evidence may tend to show that the place where the plaintiff worked was dark; the floor was rough or insecure; there was a concealed trap door with insufficient hinges or a rotten barrier; that these facts are evidentiary. The ultimate fact is that the employee was furnished an unsafe place to work, and if such action were tried by the court the findings of fact should not contain a recitation of what this witness or that witness testified to, "but should contain a finding of the ultimate facts, namely, that the place was an unsafe place to work, by reason of the fact that it was dark, or the floor rough, or otherwise." (p. 417.) At page 418 it was said:

"The *ultimate* facts which a finding should contain are, generally speaking, the *issuable* facts which a pleading should contain (sec. 2646, Stats.), and practically the same as the facts which a special verdict should contain (secs. 2857, 2858, Stats.) . . . In the present case two or three typewritten pages would have sufficed to state the ultimate facts fully and completely, whereas ten printed pages have been so used."

The chief justice also pointed out what he regarded as the ultimate facts on which the pivotal question of liability rested, and said:

"So in the present case the ultimate facts in issue were few and simple, namely: (1) Did the board of directors of the defendant corporation, either by majority vote or by unanimous vote of all, contract with the plaintiff for the construction of the well? (2) If not, had the corporation, by the course of its business

in the past, held out to the public that the pastor and bishop were its agents in the transaction of business, and authorized to make contracts of this nature on its behalf?  (3) If not, then had the corporation accepted and made such beneficial use of the well that it has ratified the unauthorized acts of its officers in causing it to be dug? The answers to these questions are the final inferences of fact which are to be drawn from and are the logical result of the subordinate or merely evidentiary facts."  (p. 417.)

In a Note in 24 L. R. A., n. s., beginning at page 1 and ending at page 79, the subject of special verdicts, including the difference between facts and evidence and between evidentiary and ultimate facts, is exhaustively covered.  Practically the uniform import of the multitudinous decisions cited is to the effect already indicated touching special findings when made by the court. Over and over again it is held that such findings are to include such facts embraced within the issues as give rise to legal conclusions.  The most common expression is the one used by this court so frequently, "material, issuable facts."  By turning to the petition in No. 19,220 it will be seen that the plaintiffs alleged the following among other facts: That at the time and for many years before the will was executed, Charles Nordmark was of unsound mind; that he was about eighty-seven years of age, very feeble of health; that he did not himself sign the will; that his name was not signed thereto by another person in his presence and by his express direction; that whatever he did touching the making and execution of the will was at the special instance of the defendant; that it was a direct result of her fraud and duress and undue influence; that since the marriage they had resided together alone in Scandia; that she obtained his full confidence; that she had charge of his business affairs; that by false representations she prejudiced him against his children and induced him to believe that they cared nothing for him but only desired his property; that she alone cared for him and would look after his welfare; that these false represen-

tations were made by her for the purpose of getting control of the property; that she would not permit the plaintiffs to visit their father; that she falsely led him to believe that they did not want to see him but intentionally remained away; that she gained such control over his mind and will that he would do whatever she dictated; that at the time of the execution of the will he was on his deathbed, and was extremely weak, both in body and mind.

Of course in one sense of the word these are not ultimate facts. In the extreme sense, the ultimate fact was his condition of mind, but these were the material issuable facts which the plaintiffs pleaded, which the defendant denied, and on which evidence was introduced.

The court was given to understand by a long list of requested findings and by another list of suggested findings that the plaintiffs desired to invoke their statutory right to have the material issuable facts on which evidence had been introduced found by the court, not merely the two general facts as to sanity of the testator and the matter of undue influence. The pivotal, determinative facts often are and must be based on the material issuable facts.

Very many of the requested and suggested findings were such and in such form that the court properly refused them, but this in no wise relieved it of the statutory duty to make such findings as under the issues and the evidence the plaintiffs were entitled to. (*A. T. & S. F. Rld. Co. v. Ferry*, 28 Kan. 686, 689; *Vickers v. Buck*, 70 Kan. 584, 586, 79 Pac. 160.) After the refusal of all the requested and suggested findings and the return of those made by the court, the plaintiffs in their motion for a new trial complained of error in refusing and making findings, and on the same day moved the court to set aside those made and to make new ones and to modify those made "for the reasons, among others, that the findings of fact as heretofore made by this court and filed November 11, 1913, do not cover all the

Nordman v. Johnson.

material facts established by the evidence in this action." Had the findings contemplated by the statute been made, then the plaintiffs could have presented them as a basis for their contention that the conclu-- sions of law were not sustained thereby, and, as shown by various authorities already quoted, it is precisely for this purpose that this statutory right is given. As was said in *A. T. & S. F. Rld. Co. v. Ferry,* 28 Kan. 686:

"The facts set forth and alleged in one pleading and denied by another, or considered denied (as is the case with reference to facts set forth and alleged in the reply), are the facts with reference to which the court should make its findings or conclusions of fact. These facts are often called the issuable facts, and the court should make special findings or conclusions with reference to them whenever either party so requests." (p. 689.)

In the instance cited by the supreme court of Wisconsin, the one conclusive fact was as to the matter of a safe place to work, but that one final fact was reached by the consideration of the material issuable facts upon which evidence had been introduced touching the pres-- ence or absence of light, the condition of the floor, the presence or absence of a trap door therein, and the question whether such trap door had sufficient hinges or a rotten barrier. Whether these be called ultimate facts or what Blackstone called "naked facts" or what some courts call "essential facts" (Note, 24 L. R. A., n. s., 25) or "inferential facts" or "probative facts" (p. 26) or "substantive facts" (p. 26) they may be said to be those material issuable facts covered by the pleadings and by the evidence, which go to make up the basis of the rights claimed by the one or both of the parties.

While it can not be said either that the decree rendered was improper or that the findings on the matters suggested would have led the court to a different conclusion, it can and must be said that the plaintiffs were denied a right, which denial amounts to error and deprives the plaintiffs of the advantage of a trial con-

ducted in accordance with the letter and spirit of the statute.

Certain other complaints have been examined and found to be not well founded.

There is no occasion to retry the cause, however, because the court has heard all the evidence and has carefully considered it.

The decree in No. 19,220 is therefore reversed and the cause remanded with directions to make findings of fact as suggested herein and to take such further necessary steps as may be in accordance herewith.

No. 19,219 involves the validity of the testator's second marriage, and, as frankly stated by counsel in his brief, "If the will is upheld and no error is found in the trial of that case, and this court affirms the trial court in all particulars therein, then all the other issues of these two cases are disposed of." This is necessarily true, for, as the counsel also suggests, even if the transfers should be set aside and the property returned to the estate it would pass under the will to the defendant.

We have examined the findings requested and those made and the conclusions of law, and the latter so far as the validity of the marriage is concerned are approved, and the corresponding portion of the decree is affirmed.

The decree as to the transfer of the property is reversed and the cause is remanded for further proceedings based upon the evidence already heard, in accordance herewith.

BURCH, J. (dissenting): In my judgment the decision of the majority is contrary to the statute and contrary to the settled law on the subject of what special findings of fact returned by the court ought to contain.

In order that the opinion of the majority may be understood and that district courts and the profession may know just what the trial court is reversed for, it is necessary to say that in the brief and in the oral

argument for the plaintiffs special stress was placed on the refusal of the court to comply with requests for findings numbered 16 to 23, inclusive. Those requests follow:

"16th. State if during Carl Nordmark's last sickness the defendant did anything to prejudice him as against the plaintiffs or any of them, and if she sought to prevent the plaintiffs getting the confidence of Carl Nordmark.

"17th. At the time of making the will state the condition of health of Carl Nordmark, state who took the initiative in procuring this will, state what the defendant did in having this will made, state where she was when the data was furnished the scriviner and when the will was executed.

"18th. State for whom Oliver L. Nelson was acting and for whose benefit, when he assisted in the making and execution of the will.

"19th. State what part the plaintiffs had in the execution of the will and when they or any of them first learned that there was a will.

"20th. State the defendant's conduct as to being secretive while she was obtaining gifts from Carl Nordmark, while the will was being executed and up until the time of Carl Nordmark's death as towards the plaintiffs.

"21st. At the time of making the will state what reason Carl Nordmark gave for not giving the plaintiffs more of the estate; and state if his beliefs and reasons were founded on any real facts; state if any effort was made to reason Carl Nordmark out of said unfounded belief, if so by whom and what were the results.

"22nd. State if Carl Nordmark was under any insane delusion, which was the direct cause of the will, at the time said will was executed, and if so, what were the insane delusions.

"23rd. State if Carl Nordmark, at the time of making the will, had sufficient mental capacity to understand the ties of relationship between him and the plaintiffs and their claims upon him, and if he at that time knew the extent of his property."

It is plain that these requests constituted a cross-examination of the court on the evidence and called for

findings of purely evidentiary and probative facts which the plaintiffs desired to use to combat the conclusions of fact stated by the court, that the testator was of sound mind and free from restraint. Only two of them, numbers 22 and 23, call for anything resembling a finding of fact in the sense of the statute, and they are fully covered by the court's sixth finding of fact, which reads as follows:

"Sixth. That the said Charles Nordmark at the time he made and executed said will was of sound mind and memory, capable of executing a valid will, was under no undue restraint or influence of any nature whatsoever, and that the making of said will was the free act and deed of the said Charles Nordmark."

It is not necessary to leave the subject before the court, go to the subject of special verdicts by juries, and then by way of argument and analogy undertake to determine what special findings by the court should contain. While statutes may differ somewhat in terms they do not differ substantially in purpose, and there is an established doctrine in the United States respecting special findings by the court. In the Cyclopedia of Law and Procedure (38 Cyc. 1980), the Encyclopedia of Pleading and Practice (8 Encycl. Pl. and Pr. 941), and the supplements to those works, decisions of the federal courts and of the courts of some twenty states are collated which are opposed to the decision of the majority, as applied to cases in general and as applied to cases of the specific kind of the one under consideration. It is not every material issuable matter put in issue by the pleadings and on which evidence is introduced which must be covered by findings, but merely the ultimate facts upon which judgment is pronounced.

The facts essential to a cause of action or defense may be few and simple or may be numerous and complex. In a great many if not in most cases it is necessary to state in detail a considerable number of facts in the nature of elements combining to make a general ultimate fact. The simple case of false representation

Nordman v. Johnson.

is an example. The elements are the making of representations, their falsity, ignorance of their falsity, reliance upon them, consequent injury, etc. In all such cases the elements are material and issuable, are put in issue, and evidence is introduced respecting them, but no court with whose decisions I am familiar requires a finding of more than the ultimate fact, as, for example, that the plaintiff was or was not induced to contract or act by false representations. Although issuable and put in issue and covered by the evidence, the court need not and ought not to find specifically whether the defendant did or did not make the representations alleged, whether if he made them they were true or false, whether if he made them he did so innocently and not fraudulently, or otherwise, whether the plaintiff was induced to act because of them, etc. Only the ultimate fact which forms the basis of and enters into the judgment should be stated. These ultimate facts include all subordinate facts, all probative and evidentiary facts, and all inferences derived from such facts. They constitute the "conclusions of fact" referred to in the statute. (Civ. Code, § 297.)

The universal rule that not everything essential to the pleading, put in issue, and covered by evidence, should be stated in findings of fact, but that ultimate facts only shall be so stated, may be illustrated by cases chosen at random.

"As to what is necessary in special findings or in an agreed statement of facts, the authorities are decisive. It is held that upon a trial by the court, if special findings are made, they must be not a mere report of the evidence, but a finding of those ultimate facts on which the law must determine the rights of the parties." (*Wilson v. Merchants' Loan & Trust Co.*, 183 U. S. 121, 127.)

"This action was brought in the district court of the county of Dakota to recover possession of land described in the complaint. The complaint alleged that the plaintiffs were the owners in fee of the land and entitled to the possession thereof, and that the defend-

ant was in possession of the land and wrongfully withheld the same. The answer denied that the plaintiffs were the owners of the land or entitled to the possession thereof, admitted that the defendant was in possession, and alleged that she was the widow, and only heir of Mathew Hayes, deceased, who at the time of his death was lawfully seized of the land and had title thereto; that he for fifteen or more years next preceding his death was 'in the open and uninterrupted possession of the land and made valuable improvements thereon; and, further, that since his death the defendant has remained in possession thereof and has continued to improve the same. The answer demanded only that plaintiffs take nothing by their action and for costs. The reply admitted the death of Mathew Hayes and that the defendant was his widow and only heir.

"The cause was tried by the court without a jury and findings of fact and conclusions of law were made to the effect following: The plaintiffs are the owners in fee and entitled to the immediate possession of the land described in the complaint. The defendant is in possession of the land and wrongfully withholds the same from the plaintiffs. As a conclusion of law the court found that the plaintiffs were entitled to the possession of the land, and ordered that judgment be entered accordingly. Thereupon the defendant made a motion for amended findings of fact as to the time and circumstances under which the defendant's husband took possession of the land, the length of time he and she occupied the land, whether their possession was exclusive or not, whether he made improvements on the land, or bought other lands adjoining, or insured the buildings on the land, or paid taxes, or claimed to be the owner of the land by gift from his father. The motion was denied. The defendant also made a motion for a new trial, and appealed from an order denying it.

"The first contention of the defendant is that the court erred in denying her motion for amended findings of fact. An examination of the proposed amended findings shows that they related to evidentiary facts, or, in other words, the court was asked to find or state the evidence on the part of the defendant relevant to the issue as to the ownership and right to possession of the land. The facts required to be found by a trial court are the ultimate issuable facts, and it is not bound to find mere evidentiary facts. (3 Dunnell,

Nordman v. Johnson.

Minn. Dig. § 9851.)    The ultimate issue in this case
was whether the plaintiffs were the owners and entitled
to the possession of the land, or was the defendant the
owner thereof and entitled to the possession?    If the
plaintiffs were, then, necessarily, the defendant was
not; therefore a finding of the ultimate fact that the
plaintiffs were the owners in fee of the land and en-
titled to its possession was all that was necessary to
support a judgment in their favor." (*Hayes v. Hayes*,
119 Minn. 1, 2, 126 N. W. 589.)

Mental capacity to make an instrument and freedom
from undue restraint are not resultants from the ex-
istence and relation of several factors.    Sound mind
and free will, considered with reference to correct
court procedure, are simple elemental facts not resolv-
able into constituents.    Unsoundness of mind is a fact
which is always sufficiently pleaded by stating it.
Causes, conditions, manifestations, are mere evidence,
and a finding of sound mind or unsound mind is always
sufficient.    Undue influence must be pleaded with more
particularity.    There must be something of a state-
ment of the nature of the inducing influence, and how
and when and by whom it was exercised.    But when
this is done the issue tendered is the existence or non-
existence of undue influence, precisely as in the Hayes
case just cited the issue with which the findings and
judgment were concerned was not badges or elements
of title, but the fact—title.    In this respect undue in-
fluence affiliates more or less closely with fraud.    It is
not enough to plead that a party has been defrauded.
The facts constituting the fraud must be stated, but
when the court comes to make findings of fact in a
fraud case it finds, not the particular facts stated and
put in issue by the pleadings, nor the evidence intro-
duced, but the ultimate fact.

"It is settled by our decisions that fraud must be
found and stated as an inferential or ultimate fact, and
that it is not sufficient to state badges of fraud or the
evidences of fraud, in a special finding." (*The Farmers*

*Loan and Trust Co. v. The Canada and St. Louis R'y Co. et al.,* 127 Ind. 250, 269, 26 N. E. 784.)

"The trial court considered these transactions, and the evidence adduced with respect to them, and held, upon all the evidence, that fraud was not established. The court also held that the son's wife purchased the property upon a valuable consideration, in good faith, and without notice of any fraud. We concur in both findings. But the plaintiff's counsel alleges error in ·that the court did not find as requested touching certain transactions of the parties subsequent to the conveyance from father to son, as that the son's wife never collected any of the rents of the property; that, when she gave the power of attorney to Elisha W. Hydorn, she intended he should enjoy all the rents and profits as long as he should live; and that Elisha had, directly or indirectly, enjoyed the profits of the property since it was conveyed to his son's wife, and that such was the intent of the latter in taking the conveyance from her husband; and that the lease was given to Mrs. Elisha Hydorn because Elisha himself could not hold it, upon account of his creditors. So long as the court found that the conveyances were not fradulent, the omission to find the various incidental evidentiary facts, tending towards an opposite finding, is not ground for reversal." (*Collins v. Hydorn,* 58 Hun, 605, 12 N. Y. Supp. 581, 583.)

This decision was affirmed by the New York court of appeals. (124 N. Y. 641, 27 N. E. 412.)

"Appellants' proposed findings, other than those covered by the findings above quoted, relate solely to allegations of matters in the answer· which are purely evidentiary, and not the ultimate facts. All these evidentiary circumstances were received in evidence by the court, and were doubtless given their legitimate weight and effect in the determination of the final and vital issue of fraudulent conveyance. The proposed findings of fact which were refused are made up of numerous details as to the conduct of the husband and wife in relation to the lands. We can not refer to each of them. But appellants' proposed finding No. 1 illustrates the character of the others, viz., 'that Jennie E. Smith, the plaintiff, is the wife of F. M. Smith, and was his wife in the year 1901, and long prior thereto.'

The relationship of these persons was a proper matter of evidence, and had its bearing up the transactions between them as affecting the husband's creditors, but the court was not required to make a finding as to such evidentiary facts. Findings as to the ultimate facts are sufficient." (*Smith v. Cleaver et al.*, 25 S. Dak. 351, 358, 138 N. W. 770.)

Precisely the same principles apply when the issues relate to mental capacity and undue influence.

"It is perhaps sufficient to state that the court found that the parties entered into the so-called partnership agreement set out in the statement of facts, on the date herein named; that pursuant to such partnership agreement Fraser and wife made, executed, and delivered to Bidwell and Probert deeds to one-third interest, each, in and to the property described in the complaint; that Bidwell and Probert performed all the conditions of said agreement on their part to be performed; that there was a good and sufficient consideration for the said deeds; that said deeds were executed and delivered by plaintiff as his free and voluntary act, and without any undue influence or duress of Bidwell and Probert; that at the time of making such partnership agreement and executing said deeds said Fraser was of sound mind and had the mental capacity to make said contract and execute said deeds; that the attempted dissolution of the copartnership by Fraser was an attempt to defraud Bidwell and Probert. Certain other facts were found, not involved in this appeal, however, as such facts affected only the interveners, Martin and Randall, the receiver of the Taos Savings Bank.

"The court is only required to find the ultimate facts in controversy, raised by the issues in the case. Here the questions to be determined were: (1) The mental condition of Fraser at the time he entered into the contract with, and executed the deeds to, Probert, and Bidwell; and (2) were said deeds executed and delivered by Fraser to Bidwell and Probert freely and voluntarily, and without any undue influence or duress on the part of either Bidwell or Probert? These were the main issues in the case, the ultimate facts which the court was required to determine in order to render a judgment. In 38 Cyc. 1980, it is stated: 'The setting out of matters of evidence and subordinate facts in the findings is neither necessary nor proper, as a finding

of ultimate facts necessarily includes all the probative facts, together with the inferences therefrom, and it is the province and duty of the court to state ultimate, rather than evidentiary or probative, facts in its findings.'

"The court was not required, nor would it have been proper, to set out the evidence upon which it relied in determining the ultimate facts found." (*Fraser v. State Savings Bank* [N. Mex. 1913], 137 Pac. 592, 594.)

"If we can justly say that the trial court employed the term 'executed the deed' in its ordinary legal signification, then we can adjudge that the finding shows a delivery for the term implies a delivery. (*Nicholson v. Combs,* 90 Ind. 515, 516.) If we can not do this, we must hold that the special finding of facts is insufficient to support the plaintiffs' claim of title. We say this in full view of many statements of evidentiary matters tending to show a delivery; but statements of evidentiary matters are, as has been again and again decided, out of place in a special finding. We can not give heed to the statements of evidentiary matters in which the finding abounds. . . . The ultimate fact of the mental soundness of the appellees' grantor is expressly stated, and that of course controls. The statement of evidentiary matters upon that subject are without force." (*Smith et al. v. James et al.,* 131 Ind. 131, 132, 133, 30 N. E. 902.)

"Where an attempt is made to avoid a gift on the ground of mental incompetency and undue influence, a finding that there was no incompetency or undue influence is sufficient, without finding as to the donor's physical condition or other facts stated as inducement to the ultimate facts. . . . It was not necessary to find whether or not Wheelock had been ill or paralyzed, or as to his physical condition, or any other fact stated in the complaint, merely as inducement to the ultimate facts, which were that he was mentally incompetent, and that defendant Godfrey knowingly and fraudulently took advantage of his weakness, and, by undue influence, by duress, and by obtaining control over him, induced and procured him to sign, execute, and deliver to her an assignment of his bank book and of the money in bank." (*Wheelock v. Godfrey* [Cal. 1893], 35 Pac. 320, syl. ¶ 2, 321.)

Nordman v. Johnson.

"A finding that at the time of the execution of the deed the grantor 'was entirely competent, mentally and physically, to transact the business of executing and delivering to . . . defendants the conveyance and bill of sale . . . ; that at the time . . . the said Isaac Ripperdan [grantor] was in full possession of his mental faculties and fully understood the transaction,' sufficiently covers the issue as to his mental competency at that time." (*Ripperdan v. Weldy*, 149 Cal. 667, syl. ¶ 2, 87 Pac. 276.)

The reasons for the rule requiring the finding of none but conclusions of fact and not the facts sustaining or opposed to such conclusions is well stated by the court of chancery appeals of Tennessee.

"This cause was before us at a former day of the term, and was fully considered, and an opinion rendered. It is now before us again on a petition to rehear, and for additional finding of facts. The additional facts which we are asked to find are merely in the nature of evidentiary facts tending to a denial of some of the conclusions of fact reached in the opinion. These matters were all fully considered by the court before announcing the conclusions contained in the original opinion. If the court should undertake to set forth the special facts upon one side of the case, it should also set forth the opposing facts upon the other side; that is, an array of the facts upon which the conclusions rest, and of the facts opposing the conclusions. The result of this, in a case involving facts only as this one, would be to send substantially the whole record to the supreme court, and fail to discharge the duty imposed by law upon this court. Indeed, we are only required to state conclusions of fact, and not any separate fact leading up to such conclusions. As we have often explained on similar applications, we sometimes, for convenience, set forth some of the stronger facts supporting our conclusion, and consider some of the more prominent opposing facts, but this is done in order that we may more thoroughly consider the final problems of fact appearing in the record. This practice does not devolve upon the court the duty of setting forth all of the separate facts upon each side of the record." (*Rhodes v. Turpin* [Tenn. 1899], 57 S. W. 351, 356.)

This practice of going into details and making findings upon some of the principal matters on each side of the controversy is the very practice condemned by the supreme court of Wisconsin in the decision in the case of *Cointe v. Congregation of St. John the Baptist*, 154 Wis. 405, 143 N. W. 180, the force of which can not be appreciated from the discussion of it contained in the majority opinion. The sole purpose of the opinion of the supreme court of Wisconsin was to demonstrate the distinction between the general, inferential, ultimate fact in issue upon which the judgment is pronounced, and subordinate, incidental, and probative facts involved in or connected with the issue— a clear line of demarkation drawn by established law, which the majority opinion strives to break down. I speak of established law because this is not a local matter, but is a subject with which courts generally have been obliged to deal and with which they have dealt most conclusively.

There is nothing in any decision of this court cited in the majority opinion that conflicts with the decisions of the courts of other states on this subject.

In *McCandliss v. Kelsey*, 16 Kan. 557, the question was not the precise meaning or application of the term "issuable facts," but the extent to which findings upon issuable facts, whatever they might be, might be omitted.

In *Briggs v. Eggan*, 17 Kan. 589, the action was on a written guaranty for the payment of a promissory note. Beyond this statement not a hint is given as to the issues involved. The trial court on request refused to make special findings of fact and made a general finding only. It was held that this was substantial error. If I were disposed to rely on statements which squarely support my position but which were made without the present precise question having been under decision by the court, I would point to this one contained in *Briggs v. Eggan*:

"Of course, the court is not bound to make special

findings concerning immaterial facts; nor is the court bound to find the material facts in any greater detail than is really necessary for the correct decision, by a higher court, of the questions of law involved in the case."    (p. 591.)

The sole point of the case of *A. T. & S. F. Rld. Co. v. Ferry,* 28 Kan. 686, was that the court denied the timely request of counsel to state in writing its conclusions of law separately from its conclusions of fact.

In the case of *Shuler v. Lashhorn,* 67 Kan. 694, 74 Pac. 264, almost an entire page of the opinion was devoted to a statement of things assumed by the plaintiff in error to be facts of the case and made the basis of his argument for a reversal. The district court had made findings of fact which did not contain any of the assumed facts. The syllabus was constructed to show that this court could not consider the assumed facts. The question in this case is whether or not findings which are made should be of the shotgun variety or be restricted to ultimate facts.

In the case of *Vickers v. Buck,* 70 Kan. 584, 79 Pac. 160, the difficulty was that the district court, instead of stating conclusions of fact and conclusions of law separately, filed a written opinion consisting of nearly fourteen pages of closely typewritten matter in which facts, law and argument were so commingled that they were not distinguishable.

In the case of *Harper v. Harper,* 83 Kan. 761, 113 Pac. 300, the expression "so it will be apparent what conclusions the court reached and the facts upon which such conclusions are founded" (syl. ¶ 1) referred to conclusions of law and the facts found upon which such conclusions were based. The subject of finding other than ultimate facts was not involved.

Just one of the decisions of this court cited in the opinion of the majority bears directly upon this controversy, and that is the McCandliss case. In the opinion it was said:

"Indeed, it would seem that before a reversal should

be ordered, it should appear not merely that the court had failed to find upon all the issuable facts, but that a finding one way or the other as to some of those not found would have compelled a judgment different from that entered upon those found. If the facts found, and by the evidence rightfully found, compel the judgment that is rendered, no matter what may be the truth concerning the issues not passed upon by the court in its findings, and whichever way they might be found, then it would be but an idle and useless ceremony to remand the case for findings which when found would only result in the same judgment." (*McCandliss v. Kelsey,* 16 Kan. 557, 559.)

If in this case the trial court had yielded to the plaintiffs' request, as it must now yield to the court's command, and had found all the matters suggested in a manner satisfactory to the plaintiffs, except those embraced in requests numbered 22 and 23, which were covered by the findings which were made, the findings of mental capacity and freedom from restraint would be unaffected and the judgment would be unaffected. This is the law elsewhere.

"If the court makes a finding of the ultimate facts, and also makes additional findings of probative facts, which are not shown to be the only probative facts established by the evidence, and which may have co-existed with the ultimate facts found, and judgment is rendered in accordance with the ultimate facts found, the judgment can not be attacked on the ground that the first findings are not true, because contradicted by the probative facts.

"When the ultimate fact is found, no finding of probative facts which may tend to establish that the ultimate fact was found against the evidence can overcome the finding of the ultimate fact." (*Smith v. Acker,* 52 Cal. 217, syl. ¶¶ 1, 2.)

The subject of special verdicts by juries having been brought into the discussion requires brief attention. Special verdicts have not existed in Kansas since 1859, as the majority opinion states. (*Foster v. Turner,* 31 Kan. 58, 1 Pac. 145.) The terms of the statute constitute a limitation of the special verdict to ultimate facts

wherever from an aggregation of probative facts a single inference constituting the substance of the issue is to be drawn, as the inference of mental capacity or lack of it, and the inference of coercion or freedom from restraint. Take the present case. Who can conceive of a special verdict stated in accordance with the requests for findings copied above? If a jury had been called and a special verdict demanded, the court would have instructed the jury on the subjects of mental capacity and undue influence. It would then have submitted to the jury just two questions: Did the testator possess mental capacity to make the will, and, was the will his free and voluntary act? Upon the return of this special verdict the court would have applied the law and rendered judgment accordingly. Unless these two facts were found no judgment could be entered. With these two facts found none of the facts from which the two ultimate inferences were drawn could have any place in the verdict. These are elementary principles of the law of special verdicts.

The note in 24 L. R. A., n. s., speaks for itself. On page 24 a column of decisions is cited to this text:

"A special verdict must determine specifically the ultimate facts which are in issue and upon which the rights of the parties directly depend, and not merely the evidential facts on which such ultimate facts rest."

The term "material issuable facts" occurs in the Wisconsin cases because of the language of the statute of that state governing special verdicts, but in none of the decisions from other states mentioned in the list referred to. In construing the Wisconsin statute the court of that state said:

The object of a special verdict is solely to obtain a decision of issues of fact raised by the pleadings, not to decide disputes between witnesses as to minor facts, even if such minor facts are essential to and establish, by inference or otherwise, the main fact." (*Baxter v. Chicago & Northwestern R. Co.*, 104 Wis. 307, 313, 80 N. W. 644.)

The following decisions illustrate the text of the L. R. A. note:

"It is the duty of a jury, in returning a special verdict, to find inferential or ultimate facts, and not evidentiary facts.

"Where fraud is an issuable fact, the jury should, in the special verdict, find fraud as an ultimate fact, and not the badges of fraud." (*Voris v. Star City Building and Loan Association*, 20 Ind. App. 630, syl. ¶¶ 6, 7, 50 N. E. 779.)

"A special verdict is one which determines specifically the ultimate facts which are in issue, and not one which determines evidential facts on which such ultimate facts rest.

"What the court is commanded by the statute to do, when so requested by either party, is to direct the jury to find a special verdict. Revised Codes, section 5445. Section 5444 clearly shows what a special verdict shall embrace. It must contain only the conclusions of fact, and not the evidence to prove them. One of the issues of fact in this case was concerning the damage to plaintiff's realty caused by this trespass. Three of the questions framed by counsel for defendants related to the evidence bearing on such issues, and not to the ultimate fact. The court was requested to ask the jury to say how many loads of lumber were carried away by defendants, how many feet of lumber were removed by them, and what the value of such lumber was. What the jury were to determine in the case was not the evidential facts, but, in the light of them, the ultimate fact as to the damage to the land which the trespass of the defendants had caused the plaintiff. The true rule is stated by Mr. Thompson in his work on trials: 'Another leading rule in regard to special verdicts is that they should find the ultimate or constitutive facts which are necessary to support the judgment of the court, and should not find those matters which are merely evidentiary in their nature, and which merely tend to show the existence of the ultimate facts.' Section 2652." (*Russell v. Meyer*, 7 N. Dak. 335, syl. ¶ 5, 339, 75 N. W. 262.)

"Upon a contest of the probate of a will, it is proper for the court to submit to the jury questions relating only to the ultimate facts to be found, covering the

Nordman v. Johnson.

issues growing out of the contest." (*Estate of Keithley*, 134 Cal. 9, syl. ¶ 1, 66 Pac. 5.)

"A special verdict may be found by consent of parties, or by the direction of the judge, or at the discretion of the jury, but can not be claimed of right by one party. A special verdict must find *facts*, and not the evidence tending to establish them.

"As to imputed influence, the law gives general rules, and declaring many instances of entreaty or control which are vulgarly esteemed unfair, to be of themselves innocent, inquires whether the testator was left a free agent, notwithstanding the motives and inducements brought to bear upon him; and only where he was not so left, pronounces influence undue or improper. As to the ultimate fact whether the testator's mind was, or was not, left free to consent or dissent, there is no prescribed or fixed principle by which the court can attain a conclusion. Upon that fact the jury must pass." (*Thompson v. Farr*, [S. Car.] 1 Spears L. 93, syl. ¶¶ 1, 4.)

Finally, in my opinion fairness to the trial court and to the profession requires that this court should place its finger upon some request for a finding which the plaintiffs made, which it was error to deny.

MASON, J. (dissenting) : None of the matters concerning which findings were asked seems to me of such character or of sufficient importance to make its refusal by the court a ground of reversal. I therefore join in the dissent.