## VORIS v. STAR CITY BUILDING AND LOAN ASSOCIATION.

[No. 2,497.    Filed June 8, 1898.    Rehearing denied October 4, 1898.]

STATUTE OF FRAUDS.—*Sales.*—*School Warrants.*—A verbal guaranty of the payment of school warrants by one negotiating the sale thereof is not made for the benefit of a third person in such sense as to bring the promise or guaranty within the statute of frauds, where the warrants were void, and known to the guarantor to be void, and the proceeds of the sale of such warrants inured to the sole benefit of the guarantor.    *pp. 639-642.*

CONTRACTS.—*Ultra Vires.*—*Estoppel.*—An agent who negotiated the sale of school warrants to a building and loan association which inured to his sole benefit is estopped from denying the authority of such association to purchase the warrants in an action against him on his guaranty of such warrants.    *pp. 643, 644.*

Voris *v.* Star City Building and Loan Association.

ESTOPPEL.—*Corporations.*—A person dealing with a corporation is presumed to know its powers and the limitations of its authority, and is estopped from pleading its want of authority. *p. 644.*

SPECIAL VERDICT.—*Practice.*—A motion for a judgment on a special verdict is not waived by filing a motion for a new trial before the ruling on the former motion. *p 646.*

SAME.—*Construction.*—*Practice.*—In construing a special verdict so as to apply the law to the facts, the court should look to the entire verdict, and not to isolated or detached parts of it, and if, after eliminating mere conclusions, there still remains sufficient inferential and ultimate facts, within the issues, upon which the judgment can rest, the verdict is sufficient. *pp. 646, 647.*

SAME.—*Jury Should Find Ultimate Facts.*—It is the duty of a jury, in returning a special verdict, to find inferential or ultimate facts, and not evidentiary facts. *p. 648.*

SAME.—*Fraud.*—Where fraud is an issuable fact, the jury should, in the special verdict, find fraud as an ultimate fact, and not the badges of fraud. *p. 648.*

From the Parke Circuit Court. *Affirmed.*

*G. W. Paul, H. D. Van Cleave* and *Crane & Anderson,* for appellant.

*George P. Haywood, Charles A. Burnett* and *Nebeker & Simms,* for appellee.

WILEY, J.—This was an action by appellee against appellant, upon his alleged verbal guaranty, whereby it is charged he guaranteed the genuineness, validity, and payment of several separate warrants issued by the trustee of Wabash township, Fountain county, Indiana, to and in the name of one Geo. W. Boyd, for "school supplies." The complaint was in seven paragraphs, and as we will notice each of the paragraphs in the subsequent discussion of the questions presented, we need now only state in a general way the nature of the action.

It is charged that the several warrants aggregated in amount $3,071.61, and that on July 19, 1894, and before the maturity of said warrants, the appellant was the owner thereof, and that on said day he sold, as-

signed and delivered all of them to appellee for and in consideration of the payment by it, to him, of the sum of $2,875.25, and that, as an inducement to appellee to purchase said warrants, the appellant guaranteed that they were good and collectible and valid warrants against said school township; that the same would be paid when due, and further guaranteed and promised that if said notes were not paid when due, he would pay the same. It is also charged that, relying upon said guaranty, and promise, appellant purchased said notes; that upon their maturity, the same were presented to one Orahood, who was then the trustee of said township, who refused to pay them; that thereupon appellee informed appellant of such refusal, and presented said warrants to him, and demanded payment from him in accordance with his guaranty and promise; that he failed and refused to pay the same; that they were due and wholly unpaid, etc. The several paragraphs of complaint are substantially the same, except the seventh, and in it is averred that said warrants were issued at the request and under the direction of the appellant, who wrote the same and caused them to be made payable to the order of said Boyd; that said warrants were signed and delivered to appellant by the trustee of said township, and for the use and benefit of appellant.

It is further averred, that instead of the consideration for such purchase being paid to appellant, it was paid to said Boyd, and that said Boyd was the agent of appellant in selling said warrants, and that said Boyd paid over said money to appellant; that the execution of said warrants was procured by the fraud, deceit, misrepresentations, and wrongs of appellant. and that they were not issued in consideration of any sale of goods or property of any kind for the use or benefit of said school township; that there was no con-

sideration whatever for the issuing thereof; that appellant was fully aware of said facts, and appellee wholly ignorant thereof. Appellant demurred to each paragraph of the complaint, which was overruled, and he excepted. He then filed an answer in two paragraphs, the first of which was a general denial and the second, averring in substance that appellee had no authority to do a banking or discount business, or to discount or purchase the warrants set out in the complaint. A demurrer to this paragraph of answer was sustained. The cause was tried by a jury, and a special verdict was returned. Appellee's motion for judgment in its favor on the special verdict was sustained and a like motion by appellant was overruled. Appellant's motion for a new trial was also overruled.

The errors assigned are as follows: (1) The court erred in overruling appellant's motion for judgment. (2) The court erred in sustaining appellee's motion for judgment. (3) The court erred in sustaining the demurrer to the second paragraph of answer. (4, 7, 8, 9, 11, 12, and 13) The court erred in overruling the demurrer to the several paragraphs of complaint. (5) The court erred in overruling appellant's motion for a new trial. (6) The court erred in giving and submitting to the jury each of the interrogatories in the special verdict from 1 to 59, inclusive.

The following facts are disclosed by the special verdict: That the appellee was and is a corporation, duly organized and doing business under the laws of the State of Indiana; that appellee, on June 29, 1894, was a real estate and loan agent in Crawfordsville, Indiana, and was a note broker and money lender; that on July 19, 1894, appellant purchased each of the orders described in the complaint, and that each of them was indorsed on the back by the name of G. W. Boyd; that said warrants were issued by the trustee

of Wabash township, etc., as renewal warrants for certain others then alleged to be outstanding against said township; that appellee paid therefor $2,875.25; that appellee purchased said warrants from G. W. Boyd; that appellant received the money from the sale thereof, less $50 commission to A. O. Behm and $160 to G. W. Boyd; that on or about June 24, 1894, appellant procured from the trustee of said township the signing of said warrants and their delivery to him; that appellant did not give any value for said warrants; that appellant procured the trustee of said township to sign and deliver said warrants to him for certain other warrants claimed by appellant to be against said township, some of which appellant claimed to be in the hands of one Isaac Davis, and some claimed by him, upon the condition and under the promise of appellant that he would take said renewal warrants and sell them, and with the money pay off and surrender to said trustee appellant's alleged warranty and Davis' said warrants, and, in failing to do so, would return the warrants sued on to the township trustee; that appellant did not deliver or cause to be delivered to said trustee any of the warrants for which the warrants sued on were given; that appellant received said warrants from said trustee on or about June 29, 1894, and placed them in the hands of said Boyd, to be by him sold for the benefit of appellant; that appellee was induced to, and did purchase said warrants because of the representations of appellant that they were valid and existing obligations of said township; that on July 19, 1894, and before the sale of said warrants to appellee, appellant represented to appellee that said warrants were valid and existing obligations of said township, and would be paid when due; that on said day, and before appellee purchased said warrants, appellant promised ap-

pellee that if it would buy them, that if they were not paid when due by said township, he would pay them; that appellee relied upon the statements, representations and promises of appellant so made; that at the time of said purchase, appellee did not have any knowledge that said renewal warrants had been issued without any consideration, and that it did not know that the warrants were still outstanding for which renewal warrants were issued; that appellee purchased said warrants in good faith; that on June 19, 1894, and before appellee purchased them, appellant guaranteed their payment; that at the time, appellant knew that the warrants for which the renewal warrants sued on were given, were then outstanding against said township and unpaid; that when said warrants were delivered to him by said trustee, he did not give anything for them; that of the amount appellee paid for said warrants appellant received $2,665.25; that appellant did not pay off the warrants owned by said Davis or any part of them; that appellant did not deliver to said trustee any of the warrants he claimed to own, or claimed that said Davis owned, when said renewal warrants were issued; that appellant or no other person returned to said trustee the renewal warrants purchased by appellee; that appellant procured by fraud, and assisted in procuring by fraud, the issuing of the warrants purchased by appellee; that appellee had no knowledge that said warrants had been fraudulently procured; that the statements made by appellant to appellee that said renewal warrants were good, etc., were false and fraudulent; that he knowingly made such representations, and that such representations induced appellee to make such purchase; that said renewal warrants had no value whatever; that said Davis did not give appellant or Boyd any authority to procure renewals

of any of his warrants; that said Boyd assisted appellant in procuring and negotiating said warrants, and so acted in the interest of appellant; that when said warrants became due, appellee presented them to the trustee of said township and demanded payment, which was refused; that thereupon appellee made a demand upon appellant for payment, which was also refused, which was done before this action was commenced; that neither appellant or said Boyd ever delivered to said trustee the warrants for which said renewal warrants were issued; that of the money paid by appellee for said renewal warrants, appellant applied to his own use the sum of $2,665.25; that appellee is entitled to recover of appellant $2,875.25, with six per cent. interest from July 19, 1894; that when appellee purchased said warrants, it was induced to believe, and did believe, from the statements and representations of appellant, that they were valid and binding obligations against said township; that on or about July 10, 1894, said Boyd delivered the warrants described in the complaint, together with two affidavits as to their genuineness, and that they were renewals of warrants previously issued for school supplies, etc., to Adam O. Behm, to be by him sold, and the proceeds, less the discount and commission, to be delivered to said Boyd; that appellee's board of directors consisted of fifteen persons; that there was no meeting of the board of directors held July 19, 1894; that said board of directors never considered the purchase of said warrants, or authorized the same; that the board of directors of appellee appointed an executive committee to transact the business of said corporation for the year 1894; that William W. Smith was president of appellee, and that he appointed Adam O. Behm, William Horn and Leopold Nierman as an executive committee, and they were such com-

mittee July 19, 1894; that the purchase of said warrants was considered and made by said executive committee; that the purchase price for said warrants was paid to said Boyd on the authority and order of said board of directors; that said Behm was the agent of said Boyd in making said sale, and he received a commission of $50.00 for his services, paid by Boyd; that at said time, said Behm was attorney of appellee, and a member of the board of directors; that when said sale was made, appellant owned said renewal warrants, and on July 19, 1894, sold them to appellee; that when the said renewal orders were executed, the trustee of said township took from said Boyd a receipt therefor as follows: "Coal Creek, Indiana, June 29, 1894. Received of George Winters the following orders or warrants: One for $585; one for $408; one for $627; one for $769; one for $191.76; one for $245.20; one for $245.20. Said orders to be cashed by me and as said orders are cashed, I hereby agree to return the old orders for which these are given. In case I fail to get orders cashed, then I agree to return said orders given this day. [Signed.] G. W. Boyd."

It is earnestly insisted by appellant that neither paragraph of the complaint states facts sufficient to constitute a cause of action, and the objections urged against the complaint are: (1) That the promise or guaranty of the appellant, as appears from the complaint, was verbal, and that it comes within the statute of frauds. (2) That the act of the appellee corporation in purchasing the warrants was *ultra vires* and void, and hence it could not recover from the appellant the money it paid to him. For an intelligent discussion of these first propositions, a brief synopsis of the several paragraphs of the complaint will not be out of place.

The first proceeds upon the theory that appellant

was the owner of the warrants; that he guaranteed that they were good and collectible and valid obligations against the township; that they would be paid when due, and, if they were not paid, he would pay them; that appellee relied upon such representations and promises, and paid appellant the sum named, etc. It is then charged that, when the warrants became due, they were presented for payment, which was refused; that appellant was informed of such nonpayment, and a demand made upon him for payment. It is to be remembered that this paragraph did not question the validity of the warrants, but sought a recovery upon the express verbal guaranty of appellant, and that such guaranty was made for the interest and benefit of appellant, who was the guarantor. The second paragraph is in all essential respects like the first. The third paragraph proceeds upon the theory that appellant was the owner and in possession of the warrants on the day of the sale to appellee; that he made (and appellee relied upon the same) representations set out in the first paragraph; that the township refused to pay them for the reason that they were not the obligations of the township; that appellee learned, after their maturity, that the warrants were not valid or binding obligations of the township, and that they never had any value, and the recovery sought in this paragraph was bottomed on the express verbal guaranty, made by appellant for his own benefit, as well as upon the implied guaranty, because of the representations made by the appellant, that the warrants were the valid obligations of the township. The theory of the fourth paragraph is that as the warrants were absolutely null and void, appellee was entitled to recover for money had and received by appellant from appellee, with six per cent. interest, because of the want of any consid-

eration for the payment of the money to appellant. The fifth paragraph sets out all the facts relied upon and relating to the whole transaction, to the effect that the warrants were issued without any consideration, on appellant's promise to have them cashed and take up outstanding orders, for which the renewal warrants were issued; that he would return said renewal warrants if he did not take up the outstanding warrants; that he failed to do so; that he made the representations heretofore set out, and it was claimed that appellee was entitled to recover because of a failure of consideration. The sixth paragraph proceeds upon the same theory as the fifth. The seventh paragraph of complaint has already been noticed at some length, and it is only necessary to state further that the theory upon which it proceeds, as we construe it, is that the appellee was entitled to recover upon the express guaranty expressed therein, and also under an implied guaranty by reason of the representations of appellant that the warrants were good and valid obligations against the township.

The first objection urged to the complaint is well taken, if the promise or guaranty of appellant was made for the benefit of a third person, for then it would come within the express inhibition of the statute of frauds and perjuries. If, however, it was a promise or guaranty made for the benefit of the appellant, it must be considered as an original promise, and binding. In *Beaty* v. *Grim*, 18 Ind. 131, it was held that an agreement made by the sellers of a contract for the delivery of hogs in reference to the performance by them, of its stipulations, in the event of the failure of the original contracting parties, was not within the statute of frauds, and could be enforced. And so a verbal guaranty of a note that it is genuine, and its maker able to pay it, made by the assignor to

the assignee at the time of the assignment and delivery, based upon a sufficient consideration, is a binding and valid obligation. *King* v. *Summitt*, 73 Ind. 312, 38 Am. Rep. 145.

The point we are now discussing is clearly and forcibly stated in *Board, etc.,* v. *Cincinnati Steam Heating Co.*, 128 Ind. 240, by Elliott, J., as follows: "Where the owner of property undertakes to pay for work and materials to be done and furnished subsequently by a sub-contractor in order to secure the completion of a building in a case where the principal contractor has failed to carry on the work, the promise is an original one, and not within the statute of frauds. This principle is intrinsically just, and its enforcement does not in the slightest degree tend to the mischief the statute of frauds and perjuries was intended to repress." In *Emerson* v. *Slater*, 22 How. 43, the Supreme Court of the United States said: "But whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." In *Horn* v. *Bray*, 51 Ind. 555, 19 Am. Rep. 742, it was held that where a party who is surety for the maker of a note procures others to sign as sureties by promising to indemnify them and save them harmless, such promise is an original undertaking, not within the statute of frauds, and may be proved by parol.

It has been held in New York that where a third party represented that the note of another was good, that it would be paid at maturity, that he would guar-

anty that it would be paid at maturity, and it proved that it was not good, and was not paid at maturity, such guaranty was an original promise and could be enforced. *Bruce* v. *Burr*, 67 N. Y. 237. In some jurisdictions it is held to be a presumption of law that, if any direct benefit to the promisor is the object sought to be obtained by his promise, he must be understood to intend an original undertaking, which is not within the statute. *Westmoreland* v. *Porter*, 75 Ala. 452; *Chapline* v. *Atkinson*, 45 Ark. 67, 55 Am. Rep. 531; *Lerch* v. *Gallup*, 67 Cal. 595.

From a review of many authorities gathered from a number of the states, we feel fully justified in saying that wherever there is in existence an obligation on the part of another, a promise to perform that obligation, if he does not, or to guaranty his performance, is not within the statute of frauds, if it is made upon a new consideration inuring to the benefit of the promisor, although the former obligation is not extinguished, provided the chief purpose of the promisor is to obtain a benefit to himself. *Thornton* v. *Williams*, 71 Ala. 555; *Westmoreland* v. *Porter, supra; Chapline* v. *Atkinson, supra; Lerch* v. *Gallup, supra; Williamson* v. *Hill*, 3 Mackey (D. C.) 100; *Mathers* v. *Carter*, 7 Ill. App. 225; *Borchsenius* v. *Canutson*, 100 Ill. 82; *Clifford* v. *Luhring*, 69 Ill. 401; *Power* v. *Rankin*, 114 Ill. 52, 29 N. E. 185; *Fears* v. *Story*, 131 Mass. 47; *Walker* v. *Hill*, 119 Mass. 249; *Fitzgerald* v. *Morrissey*, 14 Neb. 198, 15 N. W. 233; *Whitehurst* v. *Hyman*, 90 N. C. 487; *Jefferson County* v. *Slagle*, 66 Pa. St. 202; *Merriman* v. *McManus*, 102 Pa. St. 102; *Lookout Mountain R. R. Co.* v. *Houston*, 85 Tenn. 224, 2 S. W. 36; *Muller* v. *Riviere*, 59 Tex. 640, 46 Am. Rep. 291; *Spann* v. *Chochran*, 63 Tex. 240. See,

also, 1 Daniel on Negotiable Inst., section 739a; 2 Daniel on Negotiable Inst., sections 1761, 1762, 1763; *Bell* v. *Dagg*, 60 N. Y. 528; *Ross* v. *Terry*, 63 N. Y. 613; *Smith* v. *Corege*, 53 Ark. 295, 14 S. W. 93; *Malove* v. *Keener*, 44 Pa. St. 107; *Huntington* v. *Wellington*, 12 Mich. 10; *Brown* v. *Curtiss*, 2 N. Y. 225; *Cardell* v. *McNiel*, 21 N. Y. 336; *Fowler* v. *Clearwater*, 35 Barb. 143; *Dauber* v. *Blackney*, 38 Barb. 432; *Bruce* v. *Burr*, *supra*.

How much more forcibly must the rule announced apply, if the promise or guaranty is made where there is no valid or binding obligation, as in this case. Here the sole benefit arising from appellant's promise or guaranty inured to him. It could not, in the very nature of things, inure to the township, the payment of whose pretended and fraudulent warrants were guaranteed, for the township was not bound by them.

In the case before us, appellant's promise was to answer for a pretended debt of another, which was not enforcible, which in fact was void, and no debt at all, and hence it was not a promise to answer for the debt of another, but by the promise the appellant became the original debtor, and the obligation became his own. *King* v. *Summitt*, *supra*.

Another principle which clearly takes appellant's promise without the statute is that, the person or party for whom the promise was made, was not liable on the pretended warrants. See *Downey* v. *Hinchman*, 25 Ind. 453; *Crosby* v. *Jeroloman*, 37 Ind. 264; *Ellison* v. *Wisehart*, 29 Ind. 32.

In *Anderson* v. *Spence*, 72 Ind. 315, 37 Am. Rep. 162, it was said: "The genral rule running through almost all the cases is, that, if the third person is not liable, then the undertaking is not within the statute. This

doctrine is exemplified in the great number of cases, which hold that a promise to answer for the debt or default of an infant or *feme covert* is not within the statute, because there is no third person bound." *Board, etc.*, v. *Cincinnati Steam Heating Co., supra; Keesling* v. *Frazier*, 119 Ind. 185; *Shaffer* v. *Ryan*, 84 Ind. 140; *King* v. *Summitt, supra.*

Appellant's second contention, that the contract between appellee and himself was *ultra vires* and void, as shown by the complaint, cannot, in our judgment be maintained. In plain terms, appellant insists that though he made the contract pleaded, that the appellee was induced to invest its money on the fraudulent representations and promises made by him; that the contract inured to his sole benefit and he received from appellee nearly $3,000 of its money, he is entitled to avoid the performance of the contract on his part, on the ground that the appellee had no authority to make the contract. This would be a most monstrous and inequitable doctrine, and one to which the courts will not lend their aid to uphold. The law delights in equity, and courts seek to apply both the broad and wholesome rules of equity, as well as the less exacting rigors of the law. A national bank is not authorized to loan its money upon mortgage security; yet, if its cashier, or other officers make such a loan, the bank may compel the borrower to pay the debt thus created. Notwithstanding the loan thus made was in direct violation of a statute, yet a debt would be created and could be enforced. *National Bank* v. *Matthews*, 8 Otto 621. Here appellant has had the benefit of his contract with appellee. The contract was fully performed. He received from appellee a large sum of money on the contract, and now he cannot be heard to say that such contract, and its performance were not within the legitimate powers of the corpora-

tion, or that they were not authorized or acquiesced in by appellee corporation. 2 Beach on Private Corporations, par. 424, p. 702; Sedgwick on Stat. and Constr., 73; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62, 70, 20 Am. Rep. 504; *Ex Parte Chippendale,* 4 De. G. M. & G. 19; *In re National, etc., Soc.,* L. R. 5 Ch. App. 309; *In re Cork, etc., R. R. Co.,* L. R. 4 Ch. App. 748; *Fishmongers' Co.* v. *Robertson,* 5 McG. 131; *DeGraff* v. *American, etc., Co.,* 21 N. Y. 124; *National Bank* v. *Whitney,* 103 U. S. 99; *Diamond Match Co.* v. *Roeber,* 106 N. Y. 473, 13 N. E. 419; *Steam Navigation Co.* v. *Weed,* 71 Barb. 378; *Leavitt* v. *Pell,* 27 Barb. 322; *Standard Oil Co.* v. *Scofield,* 16 Abb. (N. C.) 372; *Oil Creek, etc., R. R. Co.* v. *Penn. Transportation Co.,* 83 Pa. St. 160; *Ehrman* v. *Union Cent., etc., Ins. Co.,* 35 Ohio St. 324; *Chicago, etc., R. W. Co.* v. *Derkes,* 103 Ind. 520; *State Board, etc.,* v. *Citizens' Street R. W. Co.,* 47 Ind. 407; *Sturgeon* v. *Board, etc.,* 65 Ind. 302; *Poock* v. *La Fayette Building Assn.,* 71 Ind. 357.

Another rule which antagonizes appellant's contention is that one who deals with a corporation is presumed to know the powers and limitations of its authority, and hence is estopped to plead its want of authority. 2 Beach on Private Corporations, p. 703, section 424; *Pearce* v. *Madison, etc., R. R. Co.,* 21 How. 441; *Alexander* v. *Cauldwell,* 83 N. Y. 480; *Davis* v. *Old Colony R. R. Co.,* 131 Mass. 258, 41 Am. Rep. 221; *Downing* v. *Mt. Washington Road Co.,* 40 N. H. 230. In *Kelly* v. *Mobile Building and Loan Ass'n,* 64 Ala. 501, it was said: "The loan to the appellant may not have been in conformity to, or may have been in contravention of, the by-laws of the association; but it was not *ultra vires.* By-laws of a corporation

are not enforced by avoiding contracts made in viola-
tion of them."

The case of *Poock* v. *Lafayette Building Ass'n, supra*,
is directly in point here. In that case Woods, J.,
speaking for the court, said: "If it were conceded, as
counsel claim, that appellee exceeded its powers in
making the loan and taking the note in suit, it does
not follow that the note should not and cannot be en-
forced against the makers. Appellants [sureties on
the notes] and their principal were under no incapac-
ity to borrow, and to give their notes for the amount
of the loan, and their unwillingness to pay, according
to their promise, cannot be justified under a plea that
the lender had no right to give the credit. The law may
have its reproaches, but this is not one of them." Cit-
ing, *State Board, etc.*, v. *Citizens Street R. W. Co., supra;*
*National Bank* v. *Matthews, supra.*

Here appellant was under no legal disability or in-
capacity from entering into the contract he made with
appellee, and hence under the authorities, he cannot
avoid liability on the pretense that appellee had no
right or authority to enter into the contract with him.
The demurrers to the several paragraphs of the com-
plaint were properly overruled.

The second paragraph of appellant's answer, as we
have seen, goes upon the theory that the appellee had
no authority to enter into the contract it made with
appellant, and hence such contract was null and
void. What we have said, and the principles dis-
cussed, relative to the complaint, apply with equal
force to the second paragraph of answer, and it neces-
sarily follows that there was no error in sustaining
the demurrer to it, and we need not further discuss
the question.

The motions by appellant and appellee for judg-
ment on the special verdict, and the rulings thereon,

may very properly be considered together, as they present substantially the same question. In the discussion of these questions by the learned counsel of appellant, they traverse largely the grounds of their arguments as to the sufficiency of the complaint.

Appellant's brief is of unusual length, and many authorities are cited upon the several principles of law applicable to special verdicts. We do not think that a review here of those authorities and principles, would subserve any useful purpose. Appellee insists that appellant waived his motion for judgment in his favor on the special verdict, by filing his motion for a new trial, before the ruling on the former motion. We cannot concur in this insistence. There are good reasons why this position cannot be maintained, but we need not discuss them. It is enough to say that the exact question has been decided adversely to appellee. *Cincinnati, etc., R. W. Co.* v. *Grames,* 8 Ind. App. 112; *Leslie* v. *Merrick,* 99 Ind. 180.

Appellant contends that his motion for judgment on the special verdict should have been sustained, because: (1) The findings on certain pivotal questions are mere conclusions, and not findings of inferential or ultimate facts, and (2) that the verdict contains such facts as show either a want of power or authority in appellee to make the contract, or which show that it was impossible for appellee to make the contract. In construing a special verdict so as to apply the law to the facts found, the court should look to the entire verdict, and not to isolated or detached parts of it. It may be truthfully said that some of the facts stated are mere conclusions, and that there are some contradictions in the verdict, as appellant contends, but these do not impair the verdict to such an extent that it will not support a judgment, if from the whole verdict the apparent contradictions can be reconciled,

and after eliminating what seems to be mere conclusions, there still remain sufficient inferential and ultimate facts, within the issues, upon which the judgment can rest. This proposition is so firmly fixed by the authorities that their citation and further discussion is useless.

We have already set out in this opinion all material and essential facts as found, and we need not refer to them again in detail. We think, when considered as a whole, there are no fatal contradictions in the verdict, and after eliminating everything that might be construed as conclusions, there still remains every essential fact requisite to the support of the judgment.

It is found that the warrants were procured through fraud and false representations by appellant and Boyd; that though they were issued in the name of Boyd, they were, in fact, the property of appellant; that appellant made Boyd his agent to negotiate them; that he represented that they were valid and binding obligations of the township; that they would be paid when due; that if they were not so paid he would pay them himself. He guaranteed their genuineness; appellee relied upon his representations, purchased the warrants in good faith, and paid to him therefor nearly $3,000.

The verdict further finds that appellee was a corporation, with a president and a board of directors; that the president appointed an executive committee for 1894, who had authority to act for the corporation during that year; that the negotiations between appellant, which resulted in the sale and purchase of the warrants were conducted on behalf of the appellee, by and through such executive committee; that the money paid for said warrants was paid pursuant to the authority and order of the board of directors

of the appellee; that the warrants purchased were renewal warrants, which were issued for the purpose of paying off and canceling warrants then outstanding; that they were issued at the request of appellant, on his promise and agreement that he would have them cashed and take up said outstanding warrants, and surrender them, and failing to do so, he would return said renewal warrants; that he did not pay or take up such outstanding warrants, and did not return said renewal warrants.

It is further found that when said warrants became due, they were presented for payment, which was refused; that a demand was then made upon appellant for payment, which was also refused, and that there was no consideration whatever for said renewal warrants. It is the duty of a jury in returning a special verdict, to find inferential or ultimate facts, and not evidentiary facts. Upon the *resume* of the facts found, as we have just stated them, it seems to us that they are amply sufficient to support a judgment.

It is contended by appellant that it was a mere conclusion for the jury to find that the issuing of the renewal warrants was procured by fraud, etc., as found by the answer to interrogatory number twenty-nine. The alleged fraud of appellant was a material fact charged, and appellee had the burden of proving it. The rule seems to be firmly established in this jurisdiction, that where fraud is an issuable fact, it is the duty of the jury to find fraud as an ultimate fact, and not the badges of fraud. *Lockwood* v. *Harding*, 79 Ind. 129; *Morris* v. *Stern*, 80 Ind. 227; *Elston* v. *Castor*, 101 Ind. 426, 51 Am. Rep. 754; *Caldwell* v. *Boyd*, 109 Ind. 447; *Stix* v. *Sadler*, 109 Ind. 254; *Jarvis* v. *Banta*, 83 Ind. 528. This the jury did in a plain, unequivocal manner.

We fail to find sufficient infirmities in the verdict to

warrant a reversal of the judgment. On the contrary, the verdict taken and considered as a whole, is remarkably clear, plain, and explicit. Courts are slow to lend their aid to those who have perpetrated frauds and grievous wrongs, to the injury of others, which frauds and wrongs have resulted to the material benefit of such wrongdoer, so that they may escape their just deserts, and will not do so, for by so doing it would prove a reproach to the law, and do violence to equity. As the questions arising under the motion for a new trial have been fully considered in discussing other questions, we need not notice them further.

Appellant's contention that the court erred in submitting certain interrogatories to the jury cannot be maintained. The question is properly presented by bill of exceptions, but after a careful consideration of the interrogatories complained of, we are clearly of the opinion that there is no reversible error in the ruling of the trial court thereon. The judgment is right under the facts, and a correct conclusion reached. Judgment affirmed.