Orville **PAYNE**, Appellant
(Defendant Below),

v.

**MUNDACA INVESTMENT CORPORATION**, Appellee
(Plaintiff Below).

No. 72A01–9007–CV–284.

Court of Appeals of Indiana,
First District.

Nov. 7, 1990.

rebuttable.

Joseph Leon Payne, Austin, for appellant.

Kathryn L. Pry, Charles M. Friedman, Mapother & Mapother, Jeffersonville, for appellee.

ROBERTSON, Judge.

Orville Payne (Payne) appeals from partial summary judgment entered against his assertion of certain affirmative defenses and also from judgment of foreclosure based upon his promissory note, which had been assigned to Mundaca Investment Corporation (Mundaca). We affirm in part and reverse in part.

Mundaca filed a complaint on a promissory note and requested foreclosure based upon its allegation that Payne had executed and delivered the note to Scott County–Canco Federal Credit Union (Canco) in

the amount of $50,000.00, with a 13% annual interest rate. Payne had secured the note with certain real estate. The note was eventually assigned to Cummins Employees Federal Credit Union (Cummins) and also to the National Credit Union Administration Board (the NCUAB) as the liquidating agent for Canco. Cummins and the NCUAB eventually assigned their interests in the note to Mundaca, who claimed Payne had not paid the mortgage note in accordance with its terms.

Payne answered the complaint with a general denial but also alleged that the note had been prepared by Canco after he had signed a blank sheet of paper. He claimed he had signed a note but not the note produced by Mundaca in its complaint. He also alleged he had borrowed the funds represented by the note for a period of 25 years and discovered for the first time when this suit was filed that the note fully matured only three years after its execution. Payne therefore alleged he was misled and defrauded by Canco by reason of the actual terms of the loan. He also alleged that Mundaca, as successor in interest, could not benefit from Canco's fraud.

## I.

Did the trial court improperly grant Mundaca's motion for summary judgment over Payne's assertion of the affirmative defenses of fraud in the inducement and of the illegality of the note?

Summary judgment is appropriate only where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Nahmias v. Trustees of Indiana University* (1983), Ind.App., 444 N.E.2d 1204. In reviewing the propriety of a summary judgment, the facts alleged by the party opposing the motion must be taken as true. The material on file must be construed in favor of the opponent of the motion. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630.

## A.

### FRAUD IN THE INDUCEMENT.

On the issue of fraud in the inducement, the trial judge provided the following decision:

The problem with the defenses and counterclaim of the Defendant is the pre-emption by the Federal Law which confers upon the insurance corporation, and its assigns, a legal status which cuts off all defenses. The court has found one exception which is seemingly set forth by Judge Scalia in Langley v. F.D.I.C. (1987) 108 S.Ct. 396 [sic] which appears to say that if the original transaction between the insured financial institution and its customer is tainted with fraud est factum, making the instrument entirely void, the instrument would not be subject to the statute. There would be no right, title or interest which could be diminished or defeated.

The trial judge undoubtedly referred to the federal law cited by Mundaca in its supplemental memorandum in support of summary judgment, 12 U.S.C. § 1787(i) (now 12 U.S.C. § 1787(p)):

(1) Liquidating agents of insured credit unions closed for liquidation on account of bankruptcy or insolvency may offer the assets of such credit unions for sale to the Board or as security for loans from the Board, upon receiving permission from the commission, board, or authority having supervision of such credit union, in the case of an insured State-chartered credit union, in accordance with express provisions of State law. The proceeds of every such sale or loan shall be utilized for the assets of such credit unions. The Board, in its discretion, may make loans on the security of or may purchase and liquidate or sell any part of the assets of an insured credit union closed for liquidation on account of bankruptcy or insolvency, but in any case in which the Board is acting as liquidating agent of a closed insured credit union, no such loan or purchase shall be made without approval of a court of competent jurisdiction.

(2) No agreement which tends to diminish or defeat the right, title, or interest of the Board in any asset acquired by them [sic] under this subsection, either

as security for a loan or by purchase, shall be valid against the Board unless such agreement—

    (A) shall be in writing;

    (B) shall have been executed by the credit union and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the credit union;

    (C) shall have been approved by the board of directors of the credit union, which approval shall be reflected in the minutes of such board; and

    (D) shall have been, continuously, from the time of its execution, an official record of the credit union.

The Board referred to in the statute means the National Credit Union Administration Board (the NCUAB). 12 U.S.C. § 1752(4).

Thus, the trial judge determined that the terms of the second subsection of 12 U.S.C. § 1787(p) prevented any agreement between Payne and Canco which tended to diminish or defeat the right, title, or interest of Mundaca, as successor in interest to the NCUAB. This view is apparent from the trial judge's statement that the "problem with the defenses and counterclaim of the Defendant is the pre-emption by the Federal Law which confers upon the insurance corporation, *and its assigns,* a legal status which cuts off all defenses" (emphasis supplied).

However, the trial court further stated in its order on the motions for summary judgment:

    The questions of fraud in this case is [sic] a substantial issue. After examination of the pleadings, discovery, affidavit, etc. the Court is not convinced that a case for summary judgment for either party is presented. Minds of reasonable men could well draw different inferences from the facts....

    \*    \*    \*    \*    \*    \*

The Court finds that the Plaintiff, as assignee of Canco, holds title subject to no defenses excepting only the defense of real fraud, or fraud in fact, as opposed to fraud in the inducement. The Court now believes that whether such circumstances arise in this case is a question of fact upon which the Defendant may have a jury trial as he has requested. The Plaintiff's Motion for Summary Judgment is sustained on all issues except the one issue just noted. The issue for trial will be:

    If Canco committed fraud upon Payne at the time of the transaction, was the fraud est factum or fraud in the inducement.

If it was the former, the Plaintiff has no protection under the federal statute set forth above. If the latter, defenses are cut off and the Plaintiff will be entitled to judgement of foreclosure. A jury should decide which type of fraud was committed, if any.

The NCUAB has the authority to place a federal credit union in involuntary liquidation and to appoint a liquidating agent for it. 12 U.S.C. § 1766(b)(2). Upon its finding that a federal credit union insured under the Federal Credit Union Act [12 U.S.C. §§ 1751–1795k], is bankrupt or insolvent, the Board shall close such credit union for liquidation and appoint itself liquidating agent for it. 12 U.S.C. § 1787(a)(1). The liquidating agent has the power and authority, subject to the control and supervision of the Board, to sell, enforce the collection of, and liquidate all assets and property of the credit union. When it does so, the liquidating agent may make distributions and payments to creditors and members, as their interests may appear, and also execute such documents and papers and do such other acts and things which it may deem necessary or desirable to discharge its duties. 12 U.S.C. § 1766(b)(3).

With these powers, we consider the effect of the above subsection, which the trial judge deemed controlling: 12 U.S.C. § 1787(p). The NCUAB, as the *liquidating agent* of federal credit unions, which have been closed for liquidation on account of bankruptcy or insolvency, may offer the assets of such credit unions for sale to itself as *the Board.* In addition, the NCUAB may offer those assets, in its capacity as *liquidating agent* for the ailing

credit union, to itself as *the Board*, as security for loans. The proceeds of every such sale or loan shall be utilized for the assets of such credit unions. The NCUAB, in its discretion, may make loans to itself as liquidating agent on the security of the assets of the insured credit union or may purchase any part of the assets from itself as liquidating agent to sell itself as the Board. The Board may then liquidate or sell any part of the assets.

However, no agreement which tends to diminish or defeat the right, title, or interest of the Board in any asset acquired by it under this subsection, either as security for a loan or by purchase, shall be valid against the Board unless such agreement (1) is in writing; (2) was executed by the ailing credit union and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the credit union; (3) was approved by the board of directors of the credit union, which approval was reflected in the minutes of such board; and (4) was, continuously from the time of its execution, an official record of the credit union.

■ This case involves Mundaca's attempt to collect upon a promissory note alleged to have been executed by Payne. A promissory note is a negotiable instrument under Indiana's version of the Uniform Commercial Code. IND.CODE 26–1–3–104. The note's character as a negotiable instrument is not stripped from it even though it is collateralized by a mortgage. *Smith v. Union State Bank* (1983), Ind.App., 452 N.E.2d 1059. As a negotiable instrument, the note and mortgage are governed by Article 3 of the Uniform Commercial Code, as codified in Ind.Code 26–1–3.

■ We believe we must consider the purpose of the U.C.C. in order to determine whether the above federal statute should be extended to a successor in interest to the Board. One obvious purpose of Article 3 of the U.C.C. is that instruments covered by the article be freely negotiable. To that end, a party who takes a negotiable instrument as a holder in due course takes sub-ject to real defenses but not subject to personal defenses. A party who takes as a mere holder of a note takes subject to both classes of defenses. *See* IND.CODE 26–1–3–305 through 307. This distinction shows one advantage of the negotiable instrument. One may take it as a holder in due course and again freely transfer it without worry of attack from a party who can subsequently assert a valid personal defense. However, when a prior defense may successfully be asserted, the instrument cannot be said to be freely negotiable.

■ We believe the purposes of Article 3 of the U.C.C. would be frustrated if the defenses given the NCUAB under 12 U.S.C. § 1787(p) were transferable to successors in interest, so as to pre-empt Article 3, absent explicit statutory provisions to that effect. Without such provisions, the trial court improperly determined that Mundaca should benefit from the statute as assignee of the NCUAB. The Board alone is entitled to benefit from the statute, and the Board is not a party to this case.

■ Given that Mundaca was not entitled to benefit from the statute as could the NCUAB, we must now determine whether a genuine issue of material fact survives with respect to Payne's affirmative defense of fraud in the inducement. The evidence most favorable to Payne reveals his claim that he executed a note, which has not been produced, and signed a blank sheet of paper, which was subsequently completed and which now constitutes the note sued upon. Payne also claims he was fraudulently induced to obtain the loan upon the express condition it would last 25 years and the interest rate would be changed to the prevailing prime rate after three years. These claims conflict with the language contained on the face of the note.

The evidence most favorable to Payne as the non-movant raises a genuine issue of material fact with respect to his defense of fraud in the inducement. *See Gonderman v. State Exchange Bank* (1975), 166 Ind. App. 181, 334 N.E.2d 724. Therefore, Mundaca was not entitled to judgment as a matter of law. The findings of the trial court reveal that the trial judge considered

this area usurped by the federal statute. Article 3 of the U.C.C. never entered the determination. The trial court did not determine whether the promissory note in this case is a negotiable instrument under IND.CODE 26–1–3–104. The trial court likewise did not determine whether Mundaca was a holder or holder in due course of the note. *See* IND.CODE 26–1–3–302. Upon remand, the trial judge will undoubtedly have to consider these matters.

## B.

### ILLEGALITY.

■ We next address Payne's assertion that the trial judge erroneously granted summary judgment over his affirmative defense of illegality of the note. Payne cites 12 U.S.C. § 1757 and alleges the transaction he and Canco entered into was illegal because Canco lacked authority to enter into an agreement for a note over 12 years in duration. This allegation tracks his claim that he originally signed a note upon the express condition the loan would last 25 years but the interest rate would be changed to the prevailing prime rate after three years. These claims conflict with the language contained on the face of the note, which states that the loan installments would continue monthly for three years and would be computed *as if* amortized over 25 years.

In his findings, the trial judge stated the following with respect to Canco's authority to enter into the loan transaction:

> Whether the transaction was ultra vires with respect to Canco seems to the Court to be beyond and outside the issues of this litigation. The Defendant can neither gain nor lose anything on this issue. Only regulatory bodies would be interested in acts which exceeded Canco's corporate power or authority.

We agree that regulatory bodies would be interested in acts which exceeded Canco's authority and that Payne cannot win on this issue. Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. *Erie R. Co. v. Tompkins* (1937), 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188. This case involves a congressional act designed to regulate federal credit unions. We therefore begin our analysis of this issue with an application of interpretations of federal law as it relates to the parties before us.

We find interpretations of the National Banking Act instructive:

> Moreover, it has been held repeatedly by this court that where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties.

*Thompson v. Saint Nicholas Nat'l. Bank* (1892), 146 U.S. 240, 251, 13 S.Ct. 66, 69, 36 L.Ed. 956. *See also, Schuyler National Bank v. Gadsden* (1903), 191 U.S. 451, 458–459, 24 S.Ct. 129, 131, 48 L.Ed. 258.

We find this principle equally applicable to the parties and facts before us. The provisions of the Federal Credit Union Act state that a credit union shall have the power to make loans, the maturities of which shall not exceed twelve years. This is not a case where Congress has stated that a federal credit union may not make loans. Canco had authority to make a loan to Payne. However, even if Canco made a loan to Payne with terms beyond those authorized by the statute, Congress provided no penalty or forfeiture applicable to this executed transaction. Therefore, the validity of the transaction between Canco and Payne can be questioned only by the United States, in all probability by regulatory authorities, and not by Payne himself as a private party.

Moreover, Payne raises his defense of illegality, or, more precisely, incapacity, under these facts, under Ind.Code 26–1–3–305(2)(b). The Uniform Commercial Code Comment number 5 states that this subsection covers such areas as mental incompetence, ultra vires acts or lack of corporate capacity to do business, or any other incapacity apart from infancy. Such incapacity is largely statutory. Its existence and effect is left to the law of each state. We therefore also look to the laws of this State as they involve illegality or incapacity in this transaction.

While this case must stand or fall on its own facts, we note that the defense of ultra vires is not favored by the courts. *Stadium Realty Corp. v. Dill et al.* (1954), 233 Ind. 378, 119 N.E.2d 893. Moreover,

[t]he rule is now too thoroughly established to be longer open to question, that where a contract has been executed and fully performed on the part of the corporation, or of the party with whom it contracted, neither will be permitted to insist that the contract was not within the power of the corporation.

*Wittmer Lumber Co. v. Rice* (1899), 23 Ind.App. 586, 591, 55 N.E. 868, 869.

We see no reason not to apply these doctrines to the present facts. Here, Payne obtained a loan from Canco and acknowledges the funds were transferred to his account. Canco executed the loan agreement and fully performed its part of the bargain. Payne cannot now complain the credit union exceeded its authority with regard to the terms of that agreement.

Indiana has recognized this reasoning in the context of loans. In *Voris v. Star City Building and Loan Association* (1898), 20 Ind.App. 630, 50 N.E. 779, the court did not allow Voris to claim his contract with the association was ultra vires and void because it had no authority to make the contract. The court stated:

A national bank is not authorized to loan its money upon mortgage security; yet, if its cashier, or other officers make such a loan, the bank may compel the borrower to pay debt thus created. Notwithstanding the loan thus made was in direct violation of statute, yet debt would be created and could be enforced. Here appellant has had the benefit of his contract with appellee. The contract was fully performed. He received from appellee a large sum of money on the contract, and now he cannot be heard to say that such contract, and its performance were not within the legitimate powers of the corporation, or that they were not authorized or acquiesced in by appellee corporation. (Citation omitted.)

Id. at 643–644, 50 N.E. at 783.

No genuine issue of material fact exists with regard to Payne's affirmative defense of illegality, or, more precisely, incapacity. Congress authorized Canco to enter into loan agreements with persons like Payne. If Canco exceeded its authority with regard to the terms of the loan agreement in this case, the federal government, not Payne, may complain. Moreover, Canco fully performed its part of the agreement when it transferred the funds to Payne's account. Payne therefore will not be heard to complain that the credit union had no authority to enter into a loan agreement for so long a period. The trial judge correctly decided that Canco was entitled to judgment as a matter of law on this issue. We will not disturb that decision.

## II.

Did the trial court improperly admit a photocopy of the sued upon note without proper foundation in violation of the best evidence rule and without authentication?

Payne claims the trial court improperly admitted a photocopy of the note sued upon when the original sat in Mundaca's corporate vault and could have been produced. When Mundaca offered the note for admission, Payne objected about the authenticity and foundation because of a lack of proof that Payne had signed the note. Payne did not, however, object to the note because it was not the original. After defense counsel had cross-examined the custodian of the note about the original in the corporate vault, Payne renewed his objection to the note. The trial judge stated he did not understand the basis of this objection, that is, whether Payne claimed this note had been substituted for the one actually signed, so he took the objection under advisement. Payne did not proceed to specify the basis of his objection.

■ With regard to the best evidence claim, Payne did not specifically object to the note on that ground and therefore failed to preserve any error on that issue for purposes of appeal. *First Nat. Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345. We will not consider Payne's

best evidence claim on appeal when he only objected to authenticity and foundation before the trial court.

Payne's claims of lack of authenticity and lack of foundation, to show the document admitted was the document he signed, also do not convince us that the copy of the note should have been excluded. Payne alleged in his answer to the complaint that the note involved was not typed out until after his signature was placed upon the blank sheet of paper. According to Ind.Code 26–1–3–307, unless specifically denied in the pleadings, each signature on an instrument is admitted. When the effectiveness of a signature is put in issue, the burden of establishing it is on the party claiming under the signature; but the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.

The custodian of the note testified the note was a copy of the note purchased and contained in Mundaca's records with regard to Orville Payne. After the note had been admitted, Mundaca called Payne to the stand, where he testified he had signed a blank sheet of paper and the note had been filled in around the signature. Payne testified at the trial; he was therefore neither dead nor incompetent. Payne never stated the signature on the note produced by Mundaca was not his signature. Therefore, not only could the trial court justifiably have considered that Payne had admitted the signature on the note was his, it could also have presumed the signature was genuine. The trial court committed no error when it admitted the copy of the note into evidence.

This cause is reversed in part as to the issue of summary judgment and affirmed in all other respects.

Reversed in part and affirmed in part.

RATLIFF, C.J., and GARRARD, J., concur.