**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of The Rushville National Bank, Plaintiff,**

v.

**Robert A. SKOTZKE, Ruth E. Skotzke, and Ronald Flick, Defendants.**

**No. IP 93–161 C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 20, 1994.

G. Terrence Coriden, Lawson Pushor Mote & Coriden, Columbus, IN, for plaintiff.

Peter A. Velde, Kightlinger & Gray, Indianapolis, IN, for defendants.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

This matter is currently before the Court on plaintiff's motion for partial summary judgment against defendants Robert and Ruth Skotzke, plaintiff's motion to strike defendants' affirmative defense of payment, and plaintiff's motion for oral argument. For the reasons stated below, plaintiff's motion for summary judgment is granted and plaintiff's motions to strike and for oral argument are denied as moot.

### I. Background

Plaintiff, Federal Deposit Insurance Corporation ("FDIC"), brings the instant action, inter alia, to enforce the Skotzkes' promissory note dated November 10, 1989 (the "note"), and to foreclose on the indemnifying mortgage issued as additional security for the promissory note (the "mortgage").[1] The FDIC claims that the current amount due and owing on the note is $125,923.85 plus per diem interest of $42.63 per day from January 8, 1991. Although the note and mortgage were issued in favor of Rushville, FDIC brings the instant claims in its capacity as receiver of Rushville.

The Skotzkes do not contest that they are signatories on the note, which was issued for the loan amount of $150,000.00 plus interest. The Skotzkes also do not contest that they are signatories on the mortgage, which pledged real estate in Bartholomew County, Indiana, as additional security for "any and all loss which may result by total or partial failure of the primary security to furnish a sufficient sum of money to pay the principal, interest, attorney's fees, and charge or cost on the note" and in the event the note was not paid when due.

The Skotzkes received the loan shortly before they entered into business as the sole stockholders or principals in Quality Ford Lincoln Mercury. Both of the Skotzkes signed as mortgagors of the property pledged in the indemnifying mortgage, apparently indicating that they are both owners of the property.

The Skotzkes contend that the principal amount due and owing on the note "does not exceed Fifty Thousand Dollars ($50,000) to Sixty Thousand Dollars ($60,000)." The Skotzkes also argue that Ruth is entitled to judgment against the FDIC because, Ruth asserts, Rushville wrongly required her signature on the note and mortgage, in violation of the Equal Credit Opportunity Act.

### II. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper where:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a

---

1. This case was originally filed by Rushville National Bank ("Rushville") against the Skotzkes and Ronald Flick in state court on January 18, 1991. On or about December 18, 1992, Rushville was determined to be insolvent and ordered closed. FDIC was appointed as receiver of certain of Rushville's assets, and FDIC removed the instant case to federal court. FDIC states in its brief supporting its motion for summary judgment that not all of Rushville's assets at issue in the original complaint came into the possession of FDIC upon Rushville's closure. Specifically, FDIC states defendants' guaranty of a promissory note issued by Quality Ford–Lincoln–Mercury, Inc. (referenced in ¶¶ 3, 4, and 8 of count one of the complaint) and the security agreement referenced in count two of the complaint did not become assets of the FDIC when Rushville went into receivership. Therefore, FDIC states that these assets are no longer the subject of the instant action. Since Ronald Flick was only implicated in count two of the complaint, he is also presumably no longer a part of the action (which may explain why no attorney has made an appearance on his behalf). However, since the parties have not filed any sort of motion for dismissal of the claims that "are no longer being pursued," the claims (as well as Mr. Flick) remain a part of this case. The Court anticipates that the parties will resolve this prior to the scheduled trial date.

properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir. 1989); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Denials contained in the pleadings or bald allegations that a fact exists are insufficient to raise a factual issue. *Colan v. Cutler–Hammer, Inc.,* 812 F.2d 357, 365 (7th Cir.1987) (adopting opinion in *Colan v. Cutler–Hammer, Inc.,* 1986 WL 6233 (N.D.Ill.1986)), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42.

## III. Discussion

■ The note is a negotiable instrument. Ind.Code § 26–1–3–104; *Payne v. Mundaca Investment Corp.,* 562 N.E.2d 51, 55 (Ind. App.1990) ("[a] promissory note is a negotiable instrument under Indiana's version of the Uniform Commercial Code"). That the note is collateralized by a mortgage does not change its status as a negotiable instrument. *Payne,* 562 N.E.2d at 55; *Smith v. Union State Bank,* 452 N.E.2d 1059 (Ind.App.1983). Therefore, the note and mortgage are governed by Article 3 of the Uniform Commercial Code, as codified in Ind.Code §§ 26–1–3–101 *et seq. Payne,* 562 N.E.2d at 55.[2]

■ "When signatures [on a negotiable instrument] are admitted or established, production of the instrument entitles [the] holder [of the instrument] to recover on it unless the defendant establishes a defense." Ind. Code § 26–1–3–307(2). The holder of the instrument, in order to prove her case, is only required to introduce the note, or a copy thereof, into evidence, prove its execution, and prove that the note is due and unpaid. *Id.; Harrison v. Morias,* 141 Ind.App. 537, 230 N.E.2d 545, 548 (1967). In order to preclude the entry of judgment once a plaintiff has met her burden, a defendant must specifically plead and prove a defense to liability. *Id.*

In the instant case, FDIC has made its prima facie case. FDIC has shown that it is the holder of the note and mortgage, that the Skotzkes are signatories on the note and mortgage, and that the note is due and unpaid. In response, the Skotzkes argue that Ruth Skotzke's signatures on the note and mortgage were required in violation of the Equal Credit Opportunity Act ("ECOA") and that the Skotzkes have paid more on the note than they have been credited as paying.

### A. ECOA DEFENSE

■ The Skotzkes attempt to construct their ECOA defense pursuant to the ECOA regulation concerning a lender's ability to require the signature of a spouse:

a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

12 C.F.R. § 202.7(d)(1).[3] The Skotzkes contend that Robert Skotzke was the sole applicant for the loan, but that Rushville required Ruth Skotzke to be a co-executor of the note and mortgage, in violation of the ECOA. The Skotzkes argue that, since FDIC "has not demonstrated that the loan application was taken out by both [Skotzkes,]" FDIC's motion for summary judgment must be denied.

■ The Skotzkes' attempt to formulate an "ECOA defense" to the note is late and misguided, to say the least. *See Diamond v. Union Bank & Trust of Bartlesville,* 776 F.Supp. 542, 544 (N.D.Okl.1991) ("there is no authority in statutory language or case law for the proposition that violation of the ECOA renders an instrument void"); *RTC v.*

---

2. Effective July 1, 1994, the Uniform Commercial Code will be codified at Ind.Code §§ 26–1–3.1–101 *et seq.,* but any changes in the new codification are not relevant for the purposes of the instant case.

3. Interestingly, "[t]he purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Anderson v. United Finance Co.,* 666 F.2d 1274, 1277 (9th Cir.1982) (citations omitted).

*Schonacher,* 844 F.Supp. 689, 695 (D.Kan. 1994) (same); *CMF Virginia Land, L.P. v. Brinson,* 806 F.Supp. 90, 95 (E.D.Va.1992) ("[i]nvalidation of the debt itself is a remedy too drastic for the Court to implement simply by reading between the lines of the ECOA"). Any action for violation of the ECOA must be brought:

> within two years after the date of the occurrence of the violation, or within one year after the commencement of an administrative proceeding. . . .

12 C.F.R. § 202.14(b)(2). A violation of 12 C.F.R. § 202.7(d) occurs, for statute of limitations purposes, when the creditor informs the applicant that the applicant's spouse's signature will be required in order to receive the requested credit. *Farrell v. Bank of New Hampshire–Portsmouth,* 929 F.2d 871, 873 (1st Cir.1991); *Stern v. Espirito Santo Bank of Fla.,* 791 F.Supp. 865, 868 (S.D.Fla. 1992). Therefore, the violation occurs, at the latest, at the time the applicant's spouse signs the credit instrument. *Stern,* 791 F.Supp. at 868.

■ Under this analysis, Skotzkes' ECOA claim, if any, accrued, at the latest, on November 10, 1989 (the date the note was signed). The Skotzkes' answer in this case was not made until well after two years later. Thus, the Skotzkes' statute of limitations has run on their ECOA claim. Since the Skotzkes are precluded from now bringing their ECOA claim, they are likewise precluded from asserting it as a defense to the FDIC's action. *Schonacher,* 844 F.Supp. at 694.

■ Even if the general statute of limitations on the Skotzkes' ECOA claim had not run, they would still be time-barred from asserting their ECOA claim or using it as a defense against the FDIC in the instant action. FDIC, as receiver of a failed institution, must publish and mail to all creditors shown on the institution's books notice of the liquidation, providing at least 90 days for claims to be filed. 12 U.S.C. § 1821(d)(3)(B)–(C). If an administrative claim is not filed within the applicable time period, that claim "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). A claim, defense, or counterclaim made pursuant to 12 C.F.R. § 202.7(d) that could have been asserted independently against the institution must be made as an administrative claim within the applicable time period, or else lost. *RTC v. Midwest Fed. Sav. Bank,* 4 F.3d 1490, 1497 (9th Cir.1993); *Schonacher,* 844 F.Supp. at 694.

FDIC has submitted an affidavit in support of its motion for summary judgment stating that notice was sent to Rushville's creditors and published, and the last allowable date for filing administrative claims against Rushville was March 26, 1993. The affidavit submitted by FDIC also states that the Skotzkes did not file any claims with the FDIC as Receiver for Rushville by the deadline.[4] Therefore, even if the regular statute of limitations had not run, the special statute of limitations for administrative claims against the FDIC as Receiver for Rushville has, and the Skotzkes are precluded from asserting their ECOA defense, in any form.[5]

### B. SKOTZKES' ALLEGED EXTRA PAYMENTS

■ The Skotzkes' argue that summary judgment cannot be granted because, they contend, "the amount of [their] indebtedness, if any, has not been established." FDIC has submitted affidavits and supporting documentation for FDIC's position on the total amount due and owing on the note. The Skotzkes did not raise the affirmative defens-

---

**4.** This lapse on the part of the Skotzkes is especially significant given the fact that this Court initially dismissed the instant action without prejudice to give the Skotzkes time to comply with the required administrative claims procedure. *See* Order dated March 25, 1993. The fact that the Skotzkes chose not to comply with the administrative claims procedure and yet still raised their ECOA defense as a bar to summary judgment makes their lapse look more like full-fledged amnesia.

**5.** The *D'Oench, Duhme* doctrine would also preclude the Skotzkes from prevailing on this defense; any term not properly reflected in the language of the agreement itself, or not put in writing and approved by the bank through the proper steps, is not available as a defense or counterclaim in an action by the FDIC to enforce the agreement. 12 U.S.C. § 1823(e).

es of payment or accord and satisfaction in their answer or their first amended answer. Yet, in their opposition memorandum to FDIC's motion for summary judgment, filed more than two years since their original answer, more than two months since their first amended answer, and within months of the scheduled trial date, the Skotzkes attempt to create a genuine issue of material fact about the amount of money owed on the note.

The only support that the Skotzkes offer for this defense is Robert Skotzke's affidavit, which states:

I believe that the principal amount due and owing does not exceed Fifty Thousand Dollars ($50,000) to Sixty Thousand Dollars ($60,000). Often times when I would recieve [sic] money from customers who were purchasing a used automobile and were securing said funds for the purchase of said automobile from Rushville National Bank, I would take that draft from Rushville National Bank and thereafter apply it to my indebtedness with Rushville National Bank without first running said customer's draft through my corporate books. This type of transaction has occurred on numerous occasions during the period of time in which I was in business. I had asked Rushville National Bank, on numerous occasions for an accounting as to each transaction but to date no such accounting has been given. I have requested through my counsel that an accounting be submitted through discovery, but to date no such accounting has been delivered.

The Skotzkes submit no affidavits of any of the Rushville personnel who handled these transactions; neither do the Skotzkes submit listings of the approximate dates and amounts of these transactions. Their memorandum does not include any copies of discovery requests to Rushville or FDIC for the "accounting" Robert Skotzke references (let alone motions to compel such discovery requests). Although the Skotzkes have had years to perform discovery (or bring before the Court any resistance to discovery on the part of Rushville or FDIC), all they have to support their contention is Robert Skotzke's statement that he *believes* that the principal amount due and owing does not exceed $50,-

000 to $60,000—a $10,000 range in and of itself—without any documents or statements from other people to back this claim, or any real excuse for why such documents or statements are lacking.

FDIC, on the other hand, has filed materials to support its position on the amount of money owed by Skotzkes on the note. FDIC has provided an "accounting" of sorts in the form of its materials in support of its summary judgment motion. FDIC filed the affidavit of Daryl Wathier, a credit specialist for FDIC as Receiver of Rushville, who states that he has searched all records pertaining to the Skotzkes and located all records of payments made on the note. According to Wathier's affidavit and its supporting materials, the Skotzkes only paid approximately $35,000 on the note.

The Skotzkes' attempt to back-door the affirmative defense of payment at this late stage of the proceedings is neither fair nor permissible. Rule 8(c) provides:

In pleading to a preceding pleading, a party *shall* set forth affirmatively ... payment ... and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

Fed.R.Civ.P. 8(c) (emphasis added). Simply denying a plaintiff's allegations regarding money due and owing on a note does not constitute an affirmative defense of payment. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 235 (7th Cir.1991), *reh'g denied.*

"The primary purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that a party is prepared to properly litigate it." *Fort Howard Paper Co. v. Standard Havens, Inc.,* 901 F.2d 1373, 1377 (7th Cir.1990), *reh'g denied.* Therefore, failure to plead an affirmative defense generally results in a waiver of that defense. *Bank Leumi,* 928 F.2d at 235. However, when a party argues an affirmative defense to the trial court, technical failure to plead the defense is not necessarily fatal. *DeValk*

*Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 334 (7th Cir.1987).

The procedure for amending pleadings set out at Rule 15(a). Under both Rule 8(c) and Rule 15(a), the trial court is to examine the situation and determine what it is that "justice ... requires." Considering the amount of time that the Skotzkes have had to amend their original answer to include the affirmative defense of payment, the scant notice that FDIC has had of this affirmative defense, and the fact that the trial date in this matter is fast approaching, justice would seem to require that the Skotzkes not be allowed to add the affirmative defense of payment.

■■■ This Rule 8(c) analysis, however, is unnecessary because of the Skotzkes' utter failure to present anything other than Mr. Skotzke's bald, vague allegation of payment in response to FDIC's motion for summary judgment. A party responding to a motion for summary judgment "must set forth specific facts in evidentiary affidavits or otherwise show that there are genuine, material factual issues that must be decided at trial." *Colan,* 812 F.2d at 365. Mr. Skotzke's wholly unsupported conclusory assertion of payment fails to establish a genuine issue of material fact. *See id.*

## IV. Conclusion

For the reasons stated above, plaintiff's motion for summary judgment is granted; partial summary judgment is granted to plaintiff on the Skotzkes' promissory note dated November 10, 1989, and the indemnifying mortgage.[6] Plaintiff's motion to strike is denied as moot. Plaintiff's motion for oral argument is denied as moot.

It is so ORDERED.

---

6. Plaintiff's claims for attorney's fees in accordance with the terms of the note should be addressed to the Court, along with any other possi-

ble claims for attorney's fees, at the conclusion of the entire case.